L. ELMER WOOD *et al., Exrs. vs.* JOHN P. HARTIGAN, ATTY. GEN., *et als.*

DECEMBER 10, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

334

CAPOTOSTO, J.    This is a bill in equity asking for a construction of the will of Maria J. Leary, late of the town of Little Compton, and for instructions relative thereto.    The cause, being ready for hearing for final decree, was certified to this court pursuant to general laws, 1923, chapter 339, sec. 35.    In the bill, which has a prayer for general relief, the executors specifically inquire whether certain bequests to corporations that are out of existence shall be applied *cy pres.*

The evidence shows that Maria J. Leary died April 3, 1935, leaving a will dated December 8, 1921, with four codicils executed on April 30, 1923, April 2, 1926, September 27, 1928, and August 29, 1929, respectively.    The total estate of the testatrix amounted to approximately $225,000. She gave $1000 each to three designated churches by the seventh clause of her will; $39,000 in varying sums to designated charitable corporations by the eighth clause of her will; and $4000 for a public library in the town of Little Compton by

the fourth codicil. The remainder of the estate she gave to relatives and friends.

The eighth clause of the will, in so far as material, reads as follows: "I give to each of the following institutions, the sums respectively indicated, the principal in each case to be held and safely invested and the income thereof applied to the purposes and use of the legatee: . . . to the Seaside Home of said Fall River, Three Thousand Dollars; . . . to the Women's Reform and Relief Association, of New Bedford, Three Thousand Dollars;. . . ." The former was dissolved in 1921 by act of the Massachusetts legislature, and the latter was dissolved according to the law of that state in 1930. The respondents District Nursing Association of Fall River, the New Bedford Children's Aid Society, and the Little Compton Village Improvement Society, who are engaged in activities similar in part to those formerly carried on by the defunct corporations, claim the bequests in question under either a trust or the doctrine of *cy pres*. The attorney general states in his answer that if the allegations of the bill be true, he would contend that the bequests should be applied *cy pres,* but at the hearing before us he took no position in the matter, by way of either brief or argument. The residuary legatees contend that the bequests have lapsed and, therefore, should be distributed according to the provisions of the residuary clause in the will.

The vital questions in this case are: first, whether the bequests to the legatees under consideration are charitable gifts; second, whether such bequests are absolute or in trust; and third, in case there is no trust, whether the bequests lapse or should be applied *cy pres.* The above quoted eighth clause of the will and the following facts in evidence are material in determining these issues.

The Seaside Home was incorporated under the laws of Massachusetts on November 6, 1896, for the purpose of "supplying a summer home and care for such persons, par-

ticularly infants, as would be especially benefited thereby", and it actively engaged in carrying out such purpose until 1911. Between 1896 and 1911 it became progressively evident to the management of the Seaside Home that, mainly due to changed methods in dealing with the social conditions in which it was interested, especially in reference to children, the Seaside Home, as it was being conducted, was gradually losing efficiency. In the fall of 1911 a general meeting of all the charitable organizations of Fall River was held, at the invitation and under the auspices of the Seaside Home, for a discussion of their common problems. This meeting resulted in an agreement among the attending organizations to organize the Fall River District Nursing Association. This association was accordingly incorporated early in 1912 for "promoting the social and physical welfare of the citizens of Fall River." It appears in evidence that the welfare of children, by way of clinics and other preventive means, is an important part of its activities.

The Seaside Home continued to operate as an independent unit but in cooperation with the District Nursing Association until May 1915, when the former transferred to the latter the management of its home, together with all moneys in hand, and further authorized the latter to use its name in obtaining further funds. In 1920 the Seaside Home divided all its assets between the Union Hospital of Fall River and the District Nursing Association, with the condition that all property coming to the latter in this manner was thereafter to be known as the Seaside Fund, the income therefrom to be used for the purposes for which the Seaside Home was organized. The Seaside Home was then dissolved according to Massachusetts law in 1921.

The second of these legatees, the New Bedford *Women's* Reform and Relief Association, was incorporated in Massachusetts on April 6, 1859, for the purpose of "providing a retreat for the reformation, relief and encouragement" of

unmarried mothers. (italics ours) By an amendment to its charter, dated February 1, 1870, the name was changed to the "New Bedford *Female* Reform and Relief Association", and the words "and a home for poor and destitute females" were added to its purposes as originally stated. (italics ours) No question of misnomer is raised by the parties in this case.

This corporation was dissolved according to Massachusetts law on April 28, 1933. To fully effect the dissolution, the corporation brought certain proceedings in the Supreme Court of Massachusetts praying that it be authorized and directed to transfer to the New Bedford Children's Aid Society all of its property, both real and personal, including all memorial funds which it then had in its hands. This prayer was granted by final decree of that court, dated December 17, 1930, and all its property was transferred to the New Bedford Children's Aid Society in accordance with that decree. The evidence further shows that one of the purposes of the Children's Aid Society is to care for *"unmarried mothers'* and their children, of any age, creed, religion and nationality." (italics ours)

We are convinced from this history that the legatees under consideration were charitable corporations, and that the District Nursing Association of Fall River and the New Bedford Children's Aid Society, which these legatees so clearly selected as their successors before dissolution, also are charitable corporations which are now engaged in carrying out the purposes of such legatees. Our conclusion on this point is that the legacies in question are gifts for charitable purposes, and that such purposes are being carried on at the present time for the benefit of the same class of persons and in the same localities by the above-named organizations.

The next question to consider is whether such gifts are absolute or in trust. The answer to this question depends upon the intention of the testatrix, which is to be gathered

from her language in the will creating these gifts. This intention is not to be sought in particular words and phrases, nor is it to be confined by mere technical considerations. It is well established that no particular words are required to create an express trust, if such intention can be fairly found from the language used in the will. The absence of the words "trust" or "trustee" in such a case is immaterial, as effect will be given to the obvious intent of the donor.

It is clear to us that in the instant case the gifts to these legatees are not absolute. The legacies under consideration, which appear in the eighth clause of the will with nine other legacies of a similar nature, are given to these legatees by the testatrix on condition that the principal is to be "held and safely invested and the income thereof applied to the purposes and use of the legatee." There is no ambiguity in these words. In each instance the gift is similarly limited both as to its use and the extent in which it shall be applied to such use. In view of the special circumstances in this case, the language quoted clearly shows that the intent of the testatrix was to aid in furthering the charitable purposes of the Seaside Home and the New Bedford Women's Reform and Relief Association, such corporations being selected by her merely as the media for the distribution of her benefaction to a particular class in their respective communities and in the manner that she desired. Although the testatrix did not employ the words "trust" or "trustee" in connection with these bequests, we find no difficulty in construing them as charitable gifts in trust for the purposes of the legatees rather than as absolute gifts to the legatees themselves. See *Tillinghast* v. *The Boy Scouts.* 47 R. I. 406.

The fact that these legatees are incapable of receiving and administering these gifts in trust, due to their non-existence at the death of the testatrix, is immaterial and will not cause the legacies to lapse. An otherwise valid charitable trust will not be allowed to fail for want of a competent trustee. In a

proper case, such as the one at bar, a court of equity will appoint a competent trustee to take the trust property and carry out the charitable intent of the donor. *Tillinghast* v. *The Boy Scouts, supra,* and cases cited. The appointment by the superior court of such a trustee for each of the charitable bequests involved in this case should present little difficulty in the special circumstances of this case.

For the above stated reasons and our conclusions therefrom, it becomes unnecessary to consider the doctrine of *cy pres,* as it has no application under our construction of the eighth clause of the will.

On December 20, 1937, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Sheffield & Harvey, J. Russell Haire* of Newport, for complainants.

*Burdick, Corcoran & Peckham, William A. Peckham* of Newport, for respondents Mabel T. Brown, Betsy Tompkins, Mary H. White, Lestina T. Simmons, and Harold Tompkins.

*William MacLeod* of Newport, *Richard P. Borden* of Fall River, Mass., and *Allen Sherman* of New Bedford, Mass., for District Nursing Association of Fall River and New Bedford Children's Aid Society.

*Arthur J. Sullivan* of Newport, for Little Compton Village Improvement Society.