VIOLETTE JOLLEY PRIESTLEY *et al, Exrs. vs.* MARGARET
TINKHAM *et al.*

JUNE 9, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.    This is a bill in equity brought by Violette Jolley Priestley and the Blackstone Canal National Bank of Providence, as executors under the will and codicil of Ernest W. Tinkham, late of the town of Charlestown, deceased, for the construction of that will and codicil.  The respondents are Margaret Tinkham, the widow of the testator, now about eighty-three years of age; his daughter, Miriam T. Jolley; two granddaughters and one grandson, Violette Jolley Priestley, Miriam L. Jolley and Ernest Tinkham Jolley; and a great grandson, Philip W. Priestley.  Miriam L. Jolley and Philip W. Priestley are minors.

In the superior court a guardian *ad litem* was appointed for the above-named minors, and a representative was appointed for the interests of persons not in being who might have interests under the will.  Answers were filed by these representatives and by all other respondents.  The record shows that

all legacies, with the exception of one which had lapsed, have been satisfied. The cause, being ready for hearing for final decree, was certified to this court for determination, in accordance with general laws 1938, chapter 545, § 7.

It appears of record that the testator died April 3, 1940. Both the will and codicil are typewritten. The will proper, which the parties say was drawn by the testator himself "without the aid of legal counsel" was executed in this state on January 7, 1935. The codicil, which apparently was not drawn by the testator, was executed in Florida on March 31, 1940, only three days before he died. Both these instruments were admitted to probate May 6, 1940 and letters testamentary were duly issued to these complainants.

The coexecutors, being confronted with certain problems of construction in the administration of this estate, ask the following questions: (1) What trusts, if any, are created under the will and codicil? (2) If any trusts are created, who are the trustees? (3) Whether certain payments authorized in the will and codicil should be paid out of income or in case that the income is insufficient should the payments be paid out of both income and principal? (4) Whether the last phrase in the codicil "And all necessary monies for expenses that the trustees and the co-executor may deem necessary and proper" applies only to the widow and the daughter of the testator, or whether such provision applies also to his grandchildren and great grandson?

Our construction of this will and codicil is strictly confined to a consideration of the foregoing questions. The scheme of the will proper is as follows: Clause 1 directs the payment of the testator's just debts and funeral expenses. Clause 2 gives and bequeaths "to my beloved wife, Margaret Tinkham, if she be living at my death, . . . the sum of ($150.00) One hundred and fifty dollars per month, as long as she lives, at her death, this amount to be left in the estate."

Clause 3 provides: "I give to my daughter, Mrs. Miriam T. Jolley, of Harrisville, town of Burrillville, County of Providence, State of Rhode Island. (500.00) Five hundred dollars

per month as long as she lives, payments to begin her monthly allowance not later than five weeks after my death."

"After the death of my daughter, these payments which have been paid to her, shall be left in the estate, for division among the grandchildren, Mrs. Violette Jolley Priestley, Ernest T. Jolley and Miriam L. Jolley."

In said clause 3 the testator further devises to his daughter the "real estate at Quonochontaug Beach, town of Charlestown, county of Washington, State of Rhode Island, land, house and garage, furniture and fixtures therein, the use of same as long as she lives after her death, this property to be given to her son Ernest T. Jolley." In the event of Ernest's death before his mother, "then this property shall be given to both of the other children, Mrs. Violette Jolley Priestley and Miriam L. Jolley", and in case of the death of either of these children, "this property shall be given to the survivor." Provision is further made in said clause 3 for the payment to testator's daughter of $1000 a year "to keep the buildings in repair at Harrisville, Rhode Island and Quonchontaug Beach and pay taxes on same." In that same clause the testator gives his daughter "all of the personal property, which I die seized possessed of Namely, Automobiles, Jewelry, Clothing, furniture and tools."

Clauses 4, 5, 6, 7 and 8 provide for the legacies that we have hereinbefore mentioned. In clause 9 the testator devises and bequeaths one-third of his estate to each of the three grandchildren, they "to receive their respective share of the estate on their 30th. Birthday, but not if their mother is still living, Mrs. Miriam T. Jolley, after her death, only, shall the property be divided.

"If any of the grandchildren above mentioned should die before they reach the age of 30 years old, then such child's share shall be left in the estate and divided equally among the living grandchildren, providing they have reached the age of 30 years, providing their mother is dead. As long as their mother Mrs. Miriam T. Jolley is living their shall be no division of my estate." Provision is made in said clause 9

for remainders over to testator's great grandchildren in case all his grandchildren should die before "they reach the age of 30 years old."

In clause 10 the testator describes his real estate in Florida and then says: "I leave this real estate for the executors of my estate to dispose of at any time that they, in their best judgment should be the time to sell the same, to the best advantage of the estate. All the monies received from the sale of the above real estate, to be left in my estate, and divided among my grandchildren in the final settlement of the estate in same manner and proportion as mentioned in 9th. number of this will. The executors of my estate are to pay taxes on the above named property, as the tax bills are presented for payment."

Clause 11 reads as follows: "I request that the executors of my estate will keep the monies received from interest on securities and mortgages well invested, and keep close watch of same.

"When bonds are due, reinvest the money in other good securities. If any of the bonds show weakness to a defaulting degree, if it is possible to change them for stronger bonds, the executors of my estate are requested to do so."

Clause 12 provides for the erection of a monument; clause 13 makes void any legacy "If any of the legatees . . . resort to law to break this will", and clause 14 names the testator's daughter, Miriam T. Jolley, and the Blackstone Canal National Bank as executors of the will. We note that the word "trust" or "trustee" is nowhere used by the testator in his will, nor is any one specifically named to act as trustee in that instrument.

We will now direct our attention to the codicil. In so far as pertinent it reads as follows: "Whereas by my said will I gave and bequeathed all my personal estate unot my executors and *trustees* therein named, upon trusts therein declared. Now I do hereby modify my siad will in so far only as relates to the bequest to and appointment of my said executors and trustees, and I do hereby constitute and ap-

point my grand-daughter Violette Jolley Priestley to act as co-executor along with the Blackstone Canal National Bank . . . . I do hereby further direct and declare that all the *trusts* expressed and declared in and by my said will shall be carried out subject to the following modifications and changes: That all necessary funds be forthcoming to Violette Jolley Priestly, my grand-daughter; Ernest Tinkham Jolley, my grandson; Miriam Louise Jolley, my grand-daughter; Philip Wayne Priestly, my great grandson for all necessary education and medical expenses. That out of the already established *trust* that all necessary funds be given out of said *trust fund* to Miriam Jolley my daughter and Margaret Tinkham my wife all necessary funds for medical purposes. And all necessary monies for expenses that the *trustees* and the co-executor may deem necessary and proper." (italics ours)

It is a primary rule in the construction of wills that the intention of the testator, if definitely ascertainable and lawful, must govern and that such intention must be ascertained, if possible, from a consideration of the whole will. *Meegan* v. *Brennan,* 63 R. I. 298. It is also fundamental that a will and codicil must be read together as one instrument, and consideration must be given to both instruments to ascertain the intention of the testator. *Smith* v. *City of Providence,* 63 R. I. 333. Where there are expressions of the testator's intent which are not wholly consistent with each other, such apparent inconsistencies should be reconciled, as far as possible, by comparing all pertinent parts of the will and codicil. Where reconciliation is not possible, effect must be given to that intent which in our judgment appears from the whole will to be the dominant intent, while effectuating the apparently opposing subordinate intent so far as not clearly inconsistent with the dominant intent. *Dyer* v. *Blair,* 62 R. I. 498, 506.

The first question before us is whether the testator in this cause intended to create a trust of his residuary estate. In answering this question we must remember that the will was admittedly drawn by the testator himself, a layman, and the

codicil by an undisclosed person who, according to the parties, had only the oral instructions of the testator, then near death, to guide him. In these circumstances one must expect to find inconsistencies of expression and the incorrect use of words of art. After all, the intent of the testator, if ascertainable and lawful, will be given effect, according to law, whether or not he used the correct technical word or words sufficient in themselves to express that intention.

A trust may be created by a testator even though the words "trust" or "trustee" are not used, if his intention to create a trust can be fairly found from the language of the will. *Wood* v. *Hartigan,* 59 R. I. 333, 337, 338; *South Kingstown* v. *Wakefield Trust Co.,* 48 R. I. 27, 30. Whether a trust is in fact created depends not on the title given, but on the powers conferred and the duties imposed. If such powers and duties are inconsistent with those of an executor, but are appropriate to those of a trustee, a trust is created notwithstanding that it is not so designated. *Pomroy* v. *Lewis,* 14 R. I. 349.

Let us first consider the will in this cause, apart from the codicil, on the question we are now discussing. In that instrument the testator conferred powers and imposed duties upon the executors which are clearly beyond those of such fiduciaries and entirely consistent with those of trustees. Reading together clauses 2, 3, 9, 10, and 11 of the will it appears, among other things, that the testator intended (1) payments of fixed annuities to his widow and daughter for their lives; (2) a continued accumulation of net income; (3) no total distribution of the estate for a period of many years; (4) the sale of his Florida real estate "at any time", with directions that the proceeds of that sale be left in his estate; and (5) the careful investment of interest from securities and mortgages together with the prudent reinvestment of proceeds from matured bonds. It is evident from the will itself that it was the intention of the testator to create a trust of his residuary estate, although, as a layman, he failed to recog-

nize the distinction between the powers and duties of an executor and those of a testamentary trustee.

The intention of the testator to create such a trust, which can be fairly found upon a construction of the will alone, is confirmed by the codicil to that will. In the codicil the word "trust" or "trusts" is used in three instances, the word "trustees" in two, and the term "trust fund" in one. When the will and codicil are taken and construed in connection with each other, as parts of one and the same instrument, it is our opinion that the testator intended to and effectively did create a trust of his entire residuary estate.

Since the will and codicil name no trustees, the next question is who are the trustees. This omission, in the circumstances of this cause, is one of form rather than of substance. Equity will not let a trust fail for want of a trustee. *Goffe* v. *Goffe,* 37 R. I. 542, 554. In the case of a will where no trustee is named, the executor ordinarily becomes the trustee by operation of law, unless a contrary intention appears in the will or such conclusion is deemed improper or inadvisable for sufficient reasons. *Pomroy* v. *Lewis, supra; Grinnell* v. *Baker,* 17 R. I. 41, 49; *Teel* v. *Hilton,* 21 R. I. 227.

In the instant cause what would ordinarily be implied by law is affirmed by the testator in the codicil when he says that by his will he gives and bequeaths all his personal estate to "my executors and trustees." Nothing appearing to the contrary, it is evident from this statement that the testator intended that the executors should also act as trustees. It is therefore clear to us that, by law and in accordance with the manifest intention of the testator, the complainants, Violette Jolley Priestley and the Blackstone Canal National Bank of Providence are at the present time the cotrustees under the will and codicil of Ernest W. Tinkham.

The third question before us asks whether payments of the various sums authorized by the testator are to be made out of income alone, or, in case that the income is insufficient, out of both income and principal. The directions in the will

and codicil for the payment of fixed annuities to the widow and daughter, and for the payment of other sums in addition thereto for various purposes, including the upkeep of real estate, taxes, education of the grandchildren, and medical expenses, are expressed in mandatory language and without priorities as to the order in which such payments shall be made. Reading both instruments together, it is clear to us that the testator's dominant intent plainly was to provide generously for his widow and his daughter, so that the former, who is now over eighty-three years of age, might be comfortable in the last years of her life, and that the latter might continue to live in the same manner and surroundings to which she was apparently accustomed while the testator was alive, and further, that, as the years rolled by, her annuity might not be diminished by expenditures for upkeep of property, for medical care, and for the proper education of her children.

It is significant that the testator nowhere in his will and codicil indicates the source from which the money for all these payments, which he had so positively directed, was to come. The word "income" is not used by him at all in these instruments. In the circumstances, it is clear to us that the testator intended that the specified payments should be made out of net income, if possible, but that if such income proved insufficient, resort should be had to the principal of his estate to supply any deficiency. This conclusion is borne out by the latest expression of the testator's intent when he says in the codicil: "I do hereby further direct and declare that all the trusts expressed and declared in and by my said will *shall* be carried out . . . ." (italics ours)

The fourth and last question before us raises an issue the determination of which is not so clear. Interwoven with the testator's dominant intent, as above found, the will and codicil disclose a subordinate intent, which is to make substantial provision for his grandchildren and great grandchildren. While it is true that the testator had these persons in mind and intended that the grandchildren in particular should

materially benefit under his will and codicil, still it is clearly apparent that his primary concern at all times was for his wife and his daughter. This is especially true in the case of the daughter, as the testator undoubtedly realized that her expectancy of life was much greater than that of his wife. For instance, there can be no doubt but that the testator, in the will as originally drawn, intended to subordinate the interests of his grandchildren to those of his daughter when, in clause 5 of paragraph 9 of that instrument, he provides: "Each of the above mentioned grandchildren are to receive their respective share of the estate on their 30th. Birthday, but *not* if their mother is still living, Mrs. Miriam T. Jolley, *after her death, only,* shall the property be divided." (italics ours)

The deep concern for the comfort and welfare of his wife and especially of his daughter, which the testator manifests in the will itself, appears again in the codicil to that instrument. For our present purposes, the pertinent portion of the codicil, hereinbefore quoted, modifies the will in two particulars. The first modification, which is expressed in a complete sentence, directs that "all necessary funds be forthcoming" to his grandchildren and to his great grandson, all of whom are identified by name, "for all necessary education and medical expenses." In our opinion this provision was made by the testator primarily to relieve his daughter from the burden of such expenses, at least with reference to her minor children, and secondarily out of consideration for the persons named.

The second modification, which is also expressed in a complete sentence and follows the one just mentioned, provides that the wife and the daughter of the testator be given "all necessary funds for medical purposes." By this provision the testator clearly intended to supplement the annuities which he had fixed for them in the will, so that they might not have to expend any part of those annuities for such purposes.

Immediately following the statement of the last-mentioned provision, which ends with a period, we find the

phrase that has given rise to the fourth question before us. This phrase, the first word of which begins with a capital letter, also ends with a period. It is as follows: "And all necessary monies for expenses that the trustees and the coexecutor may deem necessary and proper."

The testator's wife and his daughter argue that this phrase is a part of and should be read only in connection with the sentence that immediately precedes it. Their contention is that it excludes the grandchildren and the great grandson of the testator. All other parties respondent argue that it should be read in connection with and as a part of both the preceding sentences, contending that it includes the named grandchildren and great grandson, as well as the testator's wife and his daughter. The complainants, as coexecutors, take a neutral position on this point.

We have carefully considered the pertinent portion of the codicil with these contentions in mind. Confining ourselves for the present to a consideration of the phrase itself, we note first its position with reference to its context. It immediately follows the bequest that the testator makes for the benefit of his wife and his daughter, and not the one for the grandchildren and the great grandson. We are next attracted by the grammatical structure of the phrase. Clearly it is not a complete and independent sentence, but rather an isolated, dependent clause, whose meaning, in our judgment, has been obscured by incautious punctuation and orthography. If the person who wrote the codicil had used a comma instead of a period at the end of the sentence immediately preceding that phrase, there could be no doubt that it belonged to and was a part of that sentence only, even though the word "And" at the beginning of the phrase were written with an initial capital letter. Furthermore, while we are not called upon in this cause to determine what benefits the phrase confers, we observe generally that, to include within its scope persons with a long expectancy of life, might conceivably affect and possibly impair the principal of the

estate, which we believe is inconsistent with the intention of the testator as disclosed in the will.

As we have already indicated, the dominant intent of the testator was to provide generously for the welfare of his wife and his daughter in preference to that of the grandchildren and the great grandson. This intent is of controlling force in determining the question now before us. Keeping in mind the observations that we have above made regarding the phrase itself, and construing it in the light of the testator's dominant intent, it is our opinion that the testator intended to extend only to his wife and his daughter whatever benefits were conferred by such phrase.

On June 17, 1942, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Hinckley, Allen, Tillinghast & Wheeler, Frank L. Hinckley, Harold A. Andrews, W. Harold Hoffman, Edward M. Watson,* for complainants.

*Wright & Wright,* for Violette Jolley Priestley, individually and Ernest T. Jolley.

*Hunter C. White,* for Margaret Tinkham and Miriam T. Jolley.

*Harold P. Wright,* guardian *ad litem, pro se ipso.*