The Washington Trust Company, *Ex.* and *Tr. vs.*
Louis W. Arnold, Jr., *Ex. et al.*

MARCH 29, 1943.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Flynn, C. J.   This is a bill in equity to require the respondent Arnold, individually and as executor of the will of Caroline Eddy Savage, deceased, to account for, and to turn over to the complainant, as executor and trustee under the will of Dr. C. Grant Savage, deceased, certain real and personal property; and also for an injunction and other relief. After a hearing in the superior court on bill, answers, replication and proof, a final decree was entered, granting the principal relief prayed for; and the cause is before us on appeals by both complainant and respondent Arnold from that decree. Since the answers of other respondents joined in the prayers of the bill, we shall refer to Arnold as the respondent.

The following facts are undisputed: Doctor C. Grant Savage died October 12, 1933 in Westerly leaving a will under which the complainant bank is the duly appointed executor and trustee. The testator was survived only by his wife Caroline Eddy Savage, a brother Arthur W. Savage and a sister Neola Hathaway, now deceased.

Caroline Eddy Savage received certain real and personal property, including many stocks and bonds, under her husband's will. Thereafter she leased from the respondent bank, in its corporate capacity, a safe deposit box that stood at all times in her name alone. She died on May 1, 1941 in Westerly leaving a will under which the respondent Arnold, her cousin, is the duly appointed executor, as well as the principal beneficiary. This will is in the course of probate.

The will of Dr. C. Grant Savage was drawn by a lawyer and, after providing in the first three paragraphs for the payment of debts, *etc.*, and for the marking of certain graves, continued as follows:

"Fourth. All the rest, residue and remainder of my property and estate, real, personal and mixed, including as well any I may acquire subsequent to the execution of this will, as that of which I am now possessed, and wheresoever located, I give, devise and bequeath to my wife, Caroline Eddy Savage, to her, her heirs and assigns, forever, subject to the following conditions;

"A. I direct that she shall personally keep the property devised and bequeathed to her herein, as a separate account, including the proceeds of the sale of any real estate or personal property, and that she shall have the right to sell the whole or any part of the same, real or personal, at public auction to the highest bidder, or at private sale, for such sum or sums as she shall deem proper, and that she shall have the right to use the principal thereof, or income thereon, as she may desire.

"Fifth. If at the time of the death of my said wife any property, real or personal, remains of the property herein given and devised to my said wife, I give, devise and bequeath the same to The Washington Trust Company, . . . to it, its successors and assigns, forever, but

IN TRUST, NEVERTHELESS, for the purposes here-inafter set forth:— . . . ."

The trial justice found that the widow was given by her husband's will only a residuary life estate, coupled with broad powers to sell the property and to use the proceeds during her lifetime if she desired, but without power to dispose of any part thereof that might remain at her death. He therefore found that complainant was entitled to such of the property as was not consumed by her in her lifetime, and he accordingly granted complainant's prayers for an accounting by the respondent for all of such property as had come into his control or possession, and for an injunction to prevent his transferring or interfering with any of such property, without further order of the court.

Since all the parties agreed before us that their rights are determinable finally by the proper construction of the will of Dr. C. Grant Savage, we need consider only the respondent's reasons of appeal that involve the final interpretation of that will.

The respondent contends that by devising and bequeathing the real and personal property to his wife "her heirs and assigns, forever", as appears in the first part of paragraph fourth, the testator thereby vested in her an absolute and unconditional estate in the real and personal property; and that all subsequent provisions purporting to cut down or otherwise limit such absolute and unconditional estate were repugnant and void. He also argues that the provisions following the technical terms of limitation in paragraph fourth are not mandatory but only precatory and may be disregarded entirely. Finally he contends that, even if paragraph fifth may be considered in determining the nature of the first gift, it does not provide for a gift over of a remainder in interest, but that it is premised entirely on the condition *if* any "remains of the property herein given and devised", which the widow had the right "to use . . . as she may desire." This language, he argues, is consistent with the abso-

lute character of the gift to the widow and, by implication, confirmed her right to dispose of it by her will.

The answer to these contentions must be found from an examination of the will in the light of well-established rules of construction. The cardinal rule of testamentary construction in this state is to ascertain from the whole will the testator's dominant intent and then to give effect thereto, unless it be contrary to some established rule of law. *Cook* v. *First Universalist Church*, 23 R. I. 62, 68; *Billings* v. *Gladding*, 58 R. I. 218; *Barker* v. *Ashley*, 58 R. I. 243; *Meegan* v. *Brennan*, 63 R. I. 298.

In applying this rule to a will where the testator has used certain technical words of limitation in describing a devise and bequest, such words will be given their ordinary meaning and effect as at common law, unless a contrary intent is clearly manifested by the testator elsewhere in the will. *Cook* v. *Dyer*, 17 R. I. 90; *Kenyon for an Opinion*, 17 R. I. 149, 152, 163; *Perry* v. *Brown*, 34 R. I. 203, 219; *Buffington* v. *Work*, 61 R. I. 133; *Starrett* v. *Botsford*, 64 R. I. 1, 6.

In the instant cause the testator used technical words of limitation in describing the devise and bequest to his wife, "her heirs and assigns, forever." Such words ordinarily would be adequate to vest an absolute fee simple in the realty and a corresponding title in the personalty, which was largely of an income producing nature. But, in our opinion, the language of paragraph fourth, taken in its entirety and considered with the ultimate gift over appearing in paragraph fifth, clearly manifests the testator's contrary intent. The will as a whole discloses the testator's clear intent to annex certain specified conditions or qualifications to the gift to his wife and, though giving her broad powers as to its use and sale, to vest in her something less than an absolute and unconditional estate.

The testator did not devise and bequeath the residue to his wife, "her heirs and assigns, forever" and then stop, as respondent's argument would have it. On the contrary, he used the whole paragraph fourth to describe that gift. There-

fore, if we are trying to ascertain the testator's dominant intent in relation thereto, we should consider his complete expression and not confine ourselves to a single phrase or clause to the exclusion of all other pertinent language. Otherwise, if words of limitation once appear in a will, the testator's later explanation of his intended use of those words must be disregarded entirely, no matter how clearly and expressly such explanation may manifest his testamentary intent.

Immediately following and clearly qualifying the words "to her, her heirs and assigns, forever", he used the significant language, "subject to the following conditions"; and then he continued by enumerating certain conditions and powers that plainly qualify the gift. The first of such qualifications directs (not merely requests) that his wife *shall* "keep the property . . . as a separate account" (not *in* a separate account nor *as her* separate account). The second gives her a power to sell "as she shall deem proper" but nevertheless couples it with the restriction and direction that the proceeds shall be included in such separate account. The third gives her a right "to use the principal thereof, or income thereon, as she may desire", but it does not give her the right to dispose of it by will.

Obviously, if the testator actually had intended to vest an absolute and unconditional estate in his wife, it was wholly unnecessary to add any power of sale or of use; and it was entirely inconsistent with such an intent to limit her power over the proceeds of any sale and to restrict her to a mere *use* of the property during her life. The word "use", whether in its legal or in its ordinary meaning, is not a synonym for "dispose". See Bouvier Law Dictionary; Webster's New International Dictionary (2d ed.). Again the testator, while expressly granting to his wife certain powers of sale and of use, significantly did not likewise give to her a power to dispose of the property by her will. Nor did she have an absolute power of disposition during her life, since the property

and proceeds of any sale thereof were to be kept "as a separate account", subject, of course, to her use.

Moreover, paragraph fifth cannot be disregarded if we are trying to find the testator's dominant intent, since its provisions relate to the gift described in paragraph fourth and are part of the testator's expressed intention concerning the same property. Unquestionably he attempted by paragraph fifth to make an ultimate and detailed gift over, for the benefit of his own brother and sister, of such part of the property given to his wife as she might not use during her life. This express attempt to dispose of such property by his own will, when considered with the conditions and powers specified in paragraph fourth and the failure therein to grant to his wife any right to dispose of it by her will, seems to us to complete a pattern by which the testator clearly manifested his intent not to vest an absolute and unconditional estate in his wife.

Under our rules of construction, therefore, effect must be given to an intent thus clearly manifested in the will, unless it violates an established rule of law. The trial justice did this by interpreting the will as giving to the widow a life estate in the real and personal property, coupled with broad powers to use and consume it all, if she desired, but without the right to dispose of it by her will. Such a view satisfies the rules of testamentary construction and is supported in principle by the cases of *Billings* v. *Gladding, supra,* and *Knight* v. *Knight,* 61 R. I. 187, although the wills in those cases contained no technical words of limitation, as here.

However, if it were necessary, because of respondent's argument that the will was drawn by an experienced lawyer, to give some legal effect to the use of these technical words of limitation, it could be done by interpreting the will as giving to the widow a fee in the realty and a corresponding title in the personalty but not an absolute and unconditional estate in either. On such a possible view the widow would take the equivalent of a qualified or defeasible fee in the real and personal property, subject to being divested upon

the happening of the contingency described in paragraph fifth. So considered, the complainant as trustee would be entitled, by way of executory devise and bequest, to any of the property given to the wife that remained upon her death. For constructions similar in principle see *Squier* v. *Harvey*, 16 R. I. 226; *De Wolf* v. *Middleton*, 18 R. I. 810; *Tyler for an Opinion*, 30 R. I. 590.

But whether the widow took a life estate in the property, coupled with certain powers, as the trial justice held, or the equivalent of a qualified and defeasible fee, the net result to the respondent here would be the same, since neither of such constructions would give the wife any right to dispose of the property by her will. Without such right she could not be said to have an absolute and unconditional estate in the real and personal property.

Respondent has cited many cases from other states and the conclusions in some of them appear to support his contention with reference to repugnancy. See annotations in 75 A. L. R. 72-88 and 5 L. R. A. (N. S.) 323-326. Bust most, if not all, of such cases seem to hold the later limiting language of a will to be repugnant only after the court first had found, in accordance with certain precedents or rules of construction there prevailing, that the testator clearly had manifested his intent to make an absolute and unconditional gift to the first taker. Few, if any, of them appear to hold that such subsequent language would be void for repugnancy in all cases, even where, as here, the first gift was actually intended and made subject to express conditions or qualifications that appear in the same sentence, and where the absolute and unrestricted right to dispose of the property was not given to the first taker, expressly or by implication.

For similar reasons the Rhode Island cases, relied upon by respondent, are not inconsistent with any finding hereinbefore made in the instant cause. All of them recognized and applied the cardinal rule of testamentary construction that the testator's dominant intent, as ascertained from the whole will, must be given effect, unless it is contrary to an estab-

lished rule of law; but the court, in each of those cases, found from the whole will that the testator clearly intended to give an absolute and unconditional estate to the first taker.

Thus in the case of *Wood for an Opinion,* 28 R. I. 290, the first gift was to the testatrix's husband "to have the full use and benefit thereof unconditionally", and the court held that such absolute and unconditional language, by necessary implication, included the right to dispose of the property by his will. In *Rhode Island Hospital Trust Co.* v. *City of Woonsocket,* 48 R. I. 345, the gift was described not only in absolute terms but the testator later directed expressly that the first taker was "not to be restricted in any manner whatever from using and disposing of any part or all" of the property. This language clearly manifested the testator's intention to make an absolute and unconditional gift to the first taker and the court held that the subsequent provisions indicated no intention on his part to limit the unconditional nature thereof. In *Re Will of Kimball,* 20 R. I. 619, the court gave effect to the absolute and technical terms used in the will, which also expressly recognized the first taker's right to dispose of the property by will. In *Cahill* v. *Tanner,* 43 R. I. 403, the first gift was in absolute and technical terms followed by a mere *request* that the donee dispose by *her* will of any of the property that might remain on her death; and the court held that the plainly expressed provisions should be given effect over a merely implied intention to the contrary. In *Howard for an Opinion,* 52 R. I. 170, there was language sufficient to vest an absolute and unconditional estate in the first taker and the subsequent language was held to be too vague and general to manifest clearly an intent contrary to the first expression.

None of these Rhode Island cases contained language immediately annexing express conditions or qualifications to the gift to the first taker, as here. In those cases the court merely found the dominant intent of the testator and gave effect to the language used to describe absolute gifts, because a contrary intent was not clearly manifested elsewhere in the

wills before them. For the reasons stated, the respondent's appeal is denied and dismissed.

The complainant's appeal is based in general upon the alleged error of the trial justice in excluding certain testimony which was offered primarily to establish a practical construction by the parties of the widow's rights under the will; and, secondly, upon the failure of the trial justice to grant certain other relief in connection with access to the safe deposit box and the contents, which complainant "confidently expected" had been kept therein. The complainant pressed the first of these grounds in the event that such evidence might be necessary to support a construction favorable to it. In view of our conclusion those grounds of appeal need not be further considered. We have examined the complainant's contentions with reference to the other relief which it prayed for and which was in addition to the extensive relief granted by the decree, and we are of the opinion that, under all the circumstances existing at the time, there was no error in refusing such other relief. The complainant's appeal is therefore denied and dismissed.

The appeals of both complainant and respondent Arnold are denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Tillinghast, Collins & Tanner, Harold E. Staples,* for complainant.

*Herbert W. Rathbun, Joseph R. Murray,* for respondent Arnold.

*Ronald B. Smith,* Guardian *ad litem,* for contingent interests.