288 A.2d 701.

ANTHONY J. LUX, JR., as *Executor u/w Philomena Lux vs.*
DONNA M. LUX *et al.*

MARCH 21. 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

594

KELLEHER, J. The artless efforts of a draftsman have precipitated this suit which seeks the construction of and instructions relating to the will of Philomena Lux who died a resident of Cumberland on August 15, 1968. We hasten to add that the will was drawn by someone other than counsel of record. At the conclusion of an evidentiary hearing held before a justice of the Superior Court, an order was entered certifying this case to us pursuant to the provisions of G. L. 1956 (1969 Reenactment) §9-24-28.

Philomena Lux executed her will on May 9, 1966. She left her residuary estate to her husband, Anthony John Lux, and nominated him as the executor. Anthony predeceased his wife. His death triggered the following pertinent provisions of Philomena's will:

"*Fourth*: In the event that my said husband, Anthony John Lux, shall predecease me, then I make the following disposition of my estate:

"1.  *  *  *

"2. All the rest, residue and remainder of my estate, real and personal, of whatsoever kind and nature, and wherever situated, of which I shall die seized and possessed, or over which I may have power of appointment, or to which I may be in any manner entitled at my death, I give, devise and bequeath to my grandchildren, share and share alike.

"3. Any real estate included in said residue shall be maintained for the benefit of said grandchildren and shall not be sold until the youngest of said grandchildren has reached twenty-one years of age.

> "4. Should it become necessary to sell any of said real estate to pay my debts, costs of administration, or to make distribution of my estate or for any other lawful reason, then, in that event, it is my express desire that said real estate be sold to a member of my family.".

Philomena was survived by one son, Anthony John Lux, Jr., and five grandchildren whose ages range from two to eight. All the grandchildren were children of Anthony. The youngest grandchild was born after the execution of the will but before Philomena's death. The son is named in the will as the alternate executor. He informed the trial court that he and his wife plan to have more children. At the time of the hearing, Anthony was 30. The Superior Court appointed a guardian ad litem to represent the interests of the grandchildren. It also designated an attorney to represent the rights of individuals who may have an interest under the will but who are at this time unknown, unascertained or not in being. The parties have posed eight questions. It is the will and not the questions which is certified to us and we will, therefore, reply only to those questions which are cognizable under the statute. *Davison* v. *Deslauriers,* 109 R. I. 541, 288 A.2d 250; *Bank of Delaware* v. *Industrial National Bank,* 105 R. I. 751, 255 A.2d 150 (1969).

At the time of her death, the testatrix owned real estate valued at approximately $35,000 and tangible and intangible personal property, including bank accounts, that totaled some $7,400. The real estate, which consists of two large tenement houses, is located in Cumberland. The sole dispute is as to the nature of the devise of the real estate. Did Philomena make an absolute gift of it to the grandchildren or did she place it in trust for their benefit? The guardian takes the view that the grandchildren hold the real estate in fee simple. All the other parties take a contrary position.

Admittedly, the language before us is unclear. Accordingly, it is the duty of this court to ascertain the testator's intent as it is expressed in the will having in mind the circumstances surrounding its formulation and effectuate that intent so long as it is not contrary to law. *Industrial National Bank* v. *Glocester Manton Free Public Library,* 107 R. I. 161, 265 A.2d 724 (1970); *Industrial National Bank* v. *Budlong,* 106 R. I. 780, 264 A.2d 18 (1970).

From the record before us, we believe that Philomena intended that her real estate be held in trust for the benefit of her grandchildren. In reaching this conclusion, we must emphasize that there is no fixed formula as to when a testamentary disposition should be classified as an outright gift or a trust. The result reached depends on the circumstances of each particular case.

We are not unmindful of the formal requirements necessary for the creation of a testamentary trust. It is an elementary proposition of law that a trust is created when legal title to property is held by one person for the benefit of another. *Gooding* v. *Broadway Baptist Church,* 46 R. I. 106, 125 A. 211 (1924). Bogert, *Trust & Trustees* §1 (2d ed. 1965); 1 Scott, *Trusts* §2.3 (3d ed. 1967). It is generally accepted that such a relationship cannot be created by will unless the beneficiaries of the trust are identifiable. 1 Scott, *supra,* §54. However, no particular words are required to create a testamentary trust. The absence of such words as "trust" or "trustee" is immaterial where the requisite intent of the testator can be found. *Priestley* v. *Tinkham,* 68 R. I. 103, 26 A.2d 599 (1942); *Wood* v. *Hartigan,* 59 R. I. 333, 195 A. 507 (1937); *Town of South Kingstown* v. *Wakefield Trust Co.,* 48 R. I. 27, 134 A. 815 (1926). A trust never fails for lack of a trustee. *Jorge* v. *da Silva,* 100 R. I. 654, 218 A.2d 661 (1966); *Goffe* v. *Goffe,* 37 R. I. 542, 94 A. 2 (1915).

The guardian contends that the testatrix has vested in the grandchildren an absolute and unconditional title to

her real and personal property and that any subsequent conditions which purport to limit such an estate are repugnant and void. In taking this position, he places great emphasis on the holding of *Howard for an Opinion,* 52 R. I. 170, 159 A. 143 (1932). There, the residuary estate, both real and personal property, was given to the beneficiary and "her heirs and assigns forever" with a proviso that if the beneficiary had not reached her majority at the time of the testator's decease, then she was to receive all the income from "bank deposits, bonds, stocks, notes, rents or otherwise" until such time as when the beneficiary "shall come in full possession thereof." The court ruled that the first part of the residuary clause gave the beneficiary, in clear and unequivocal language, title to the real estate in fee simple and an absolute gift of the personalty and that the second provision did not diminish the original grant. None of the language of the will before the court in the *Howard* case showed any intent by the testator to deprive the beneficiary of full and complete ownership of the residuary. We must concede that the court in *Howard* remarked that, had the testator intended a trust, he would have designated a trustee and delineated his powers and duties. This observation is pure dicta. A close examination of the case shows that the controlling element which led to the court's ultimate holding was the language found in the residuary clause. *See Washington Trust Co.* v. *Arnold,* 69 R. I. 121, 31 A.2d 420 (1943).

When the residuary clause in the instant case is viewed in its entirety, it is clear that Philomena did not give her grandchildren a fee simple title to the realty. It appears that she, realizing the nature of this bequest and the age of the beneficiaries, intended that someone would hold and manage the property until they were of sufficient age to do so themselves. The property is income-producing and apparently she felt that the ultimate interest of her grandchildren would be protected if the realty was left intact

until the designated time for distribution. The use of the terms "shall be maintained" and "shall not be sold" is a strong indication of Philomena's intent that the property was to be retained and managed by some person for some considerable time in the future for the benefit of her son's children. This is a duty usually associated with a trustee. We therefore hold that Philomena's will does create a trust on her real estate.

Having found the trust, the question of who shall serve as trustee is easily answered. The general rule is that, unless a contrary intention appears in the will or such an appointment is deemed improper or undesirable, the executor would be named to the position of trustee. *Jorge* v. *da Silva, supra; Priestley* v. *Tinkham, supra; Pomroy* v. *Lewis,* 14 R. I. 349 (1884). We think this issue should be more appropriately resolved in the Superior Court since it is authorized to appoint a trustee whenever an instrument creating a trust fails to name the residuary fiduciary. Section 18-2-1.

Before determining the individuals who may benefit from Philomena's benevolence, it should be noted that the residuary devise to the grandchildren is a class gift[1] which in no way violates the rule against perpetuities. The rule, in seeking to insure the free administration of property, requires that interest must vest within a life or lives in being at the time of the creation of the future interest plus twenty-one years thereafter including an allowance for the period of gestation in those instances where there is a posthumous birth. The person whose life serves as the meas-

---

[1] A testamentary class gift is a gift to a group whose number at the time of the gift is uncertain but which will be ascertained at some future time when all who constitute the class will take an equal or other definite portion, the amount of the share of each being dependent upon the number that ultimately constitutes the class. *Industrial National Bank* v. *Glocester Manton Free Public Library,* 107 R. I. 161, 265 A.2d 724 (1970); *Industrial National Bank* v. *Dyer,* 96 R. I. 39, 188 A.2d 909 (1963).

uring rod need not be mentioned in the will, nor need he take any interest in the property. He need not be connected in any way with the property or the persons designated to take it. Gray, *Rule Against Perpetuities* §219.2, n. 2 (4th ed. 1942); Leach, *Perpetuities in a Nutshell*, 51 Harv. L. Rev. 638 (1938).[2] The life in being is Philomena's son. No grandchild will be born to the testatrix once her son dies with a possible exception of an allowance being made for the gestation period. *Hill* v. *Birmingham*, 131 Conn. 174, 38 A.2d 604 (1944).

The ascertainment of time within which a person who answers a class description such as "children" or "grandchildren" must be born in order to be entitled to share in a testator's bounty is not an easy matter. In seeking a solution, the court must seek to effectuate the testator's intent. We have said that where there is a testamentary gift to a class, persons who take are to be ascertained at the testator's death unless the will expressly or impliedly directs otherwise. *Winsor* v. *Brown*, 48 R. I. 200, 136 A. 434 (1927). Accordingly, depending upon the circumstances of each case, the class may be closed as of the date of the execution of the will, at the termination of an intervening life interest, or when there is no possibility of the birth of additional children or grandchildren.

In *Industrial Trust Co.* v. *Wilson*, 61 R. I. 169, 200 A. 467 (1938), this court was confronted with the problem as to whether the testator intended to benefit only those nieces and grandchildren living at the time of his death or whether those born after his death would be included within the class. The court found no intent to exclude the afterborn and ruled that membership in the class would be determined at the time scheduled for the distribution of the gift to the class. Although there was an intervening

---

[2] For a comparative updated view of this article, see Leach, *Perpetuities: The Nutshell Revisited*, 78 Harv. L. Rev. 973 (1965).

life estate in the *Wilson* case, the result reached there is applicable here.

The rationale for permitting a class to increase in size until the time for distribution stems from a judicial recognition that generally, when a testator describes the beneficiaries of his bounty by some group designation, he has in mind all those persons whenever born who come within the definition of the term used to describe the group. Normally, if he had in mind the individual members of the designated group, he would have described them by name. This recognition is tempered by the presumption that testators usually would not intend to keep the class open at the expense of an indefinite delay in the distribution of the estate. Since there is no good reason to exclude any person who is born before the period of distribution, all such persons are, in the absence of a contrary testamentary intent, deemed to be members of the class. Casner, *Class Gifts to Others than to "Heirs" or "Next of Kin" Increase in the Class Membership*, 51 Harv. L. Rev. 254 (1938); 5 *American Law of Property* §§22.40, 22.41 (1952); see concurring opinion, Frost and Roberts, JJ., *Rhode Island Hospital Trust Co.* v. *Bateman*, 93 R. I. 116, 172 A.2d 84 (1961).

Despite our invocation of the rule requiring the class to remain open until the corpus is distributed, we still must determine what Philomena intended when she said that the corpus has to be preserved until the "youngest grandchild" becomes twenty-one.

There are four possible distribution dates depending on the meaning of "youngest." Distribution might be made when the youngest member of the class in being when the will was executed attains twenty-one; or when the youngest in being when the will takes effect becomes twenty-one; or when the youngest of all living class members in being at any one time attains twenty-one even though it is physically possible for others to be born; or when the youngest when-

ever it is born attains twenty-one. This last alternative poses a question. Should we delay distribution here and keep the class open until the possibility that Philomena's son can become a father becomes extinct? We think not.

We are conscious of the presumption[3] in the law that a man or a woman is capable of having children so long as life lasts. A construction suit, however, has for its ultimate goal the ascertainment of the average testator's probable intent if he was aware of the problems that lead to this type of litigation. *Manufacturers National Bank* v. *McCoy*, 100 R. I. 154, 212 A.2d 53 (1965). It is our belief that the average testator, when faced with the problem presented by the record before us, would endorse the view expressed in 3 Restatement, *Property* §295, comment *k* at 1594 (1940),[4] where in urging the adoption of the rule that calls for the closing of the class when the youngest living member reaches the age when distribution could be made, states:

> "When all existent members of the class have attained the stated age, considerations of convenience * * * require that distribution shall then be made and that the property shall not be further kept from full utilization to await the uncertain and often highly improbable conception of further members of the group. The infrequency with which a parent has further children after all of his living children have attained maturity, makes this application of the rule of convenience justifiable and causes it to frustrate the unexpressed desires of a conveyor in few, if any, cases."

We hold, therefore, that distribution of the trust corpus shall be made at any time when the youngest of the then living grandchildren has attained the age of twenty-

---

[3]Chief Justice Kenison in *In re Bassett Estate*, 104 N. H. 504, 190 A.2d 415 (1963), classifies the so-called irrebutable presumption of lifelong fertility as an "anachronism" and points out that this theory has been criticized by distinguished and noted legal scholars.

[4]The example used in this comment is a gift to " 'the children of B, distributable when the youngest of such children attains the age of 21 years.' "

one. When this milestone is reached, there is no longer any necessity to maintain the trust to await the possible conception of additional members of the class.

Although Philomena declared that the real estate was not to be sold until the youngest grandchild became twenty-one, her later statements about the necessity of its sale amounted to her awareness that future circumstances might require the liquidation of her real estate sometime prior to the time her youngest grandchild becomes twenty-one. The Superior Court was informed and documentary evidence was introduced which showed such a precipitous drop in the rental income as would warrant a trustee to seek a better investment.

Section 18-4-2(b) provides that, in the absence of any provision to the contrary, every trust shall be deemed to have conferred upon the trustee a discretionary power to sell the trust estate, be it real or personal property. Section 18-4-10 specifically authorizes a trustee, whenever he believes it desirable to sell trust property, to seek the Superior Court's approval for such a transaction.

When the real estate is sold, the proceeds from such sale shall, because of the doctrine of the substitute res, replace the realty as the trust corpus. *Industrial National Bank* v. *Colt,* 102 R. I. 672, 233 A.2d 112 (1967); *Dresser* v. *Booker,* 76 R. I. 238, 69 A.2d 45 (1949).

The impending sale brings into focus the testatrix's "express *desire* that said real estate be sold to a member of my family." (emphasis added) The words "express desire" are purely precatory. We have said that precatory language will be construed as words of command only if it is clear that the testator intended to impose on the individual concerned a legal obligation to make the desired disposition. *Young* v. *Exum,* 94 R. I. 143, 179 A.2d 107 (1962). We think it clear that since Philomena's primary goal was to benefit her grandchildren, we see nothing in the record

that would justify a conclusion that she intended that the potential purchasers of her real estate be limited to the members of her family.

Finally, we come to the allocation of income. The will is silent as to this item. Over a half-century ago, we said that if the will shows no intention on the part of the testator that income be accumulated, income is payable to the beneficiary as it accrues. *Butler* v. *Butler,* 40 R. I. 425, 101 A. 115 (1917). This rule has been reaffirmed on many occasions. Should Philomena's son's hope for additional progeny become a reality, the quantum of each share of income received by a grandchild would be reduced as each new member of the class joins his brothers and sisters.

The parties may present to this court for approval a form of judgment in accordance with this opinion, which will be entered in the Superior Court.

*Swan, Keeney & Jenckes, Conrad M. Cutcliffe* for plaintiff.

*Cawley, Gilroy & McDonough, John F. McDonough, William G. Gilroy, Clifford J. Cawley,* of counsel, in behalf of Guardian Ad Litem, William G. Gilroy; *Edward C. Parker,* in behalf of All Persons Not in Being or Not Ascertainable; *Edward R. Hughes, Jr.,* in behalf of Anthony J. Lux, Jr., as an individual, defendants.