In the Matter of the Intermediate Accounting of MARINE MIDLAND BANK-ROCHESTER, as Cotrustee with Leland B. Dow, Jr., and Others, Under the Will of Fayette B. Dow, Deceased, and the Construction of the Will of Fayette B. Dow, Deceased. RICHARD V. Dow et al., Appellants-Respondents; HARRY P. MESSINA, JR., as Guardian ad Litem, Respondent-Appellant; MARINE MIDLAND BANK et al., Respondents.

Fourth Department, January 14, 1977

324

*Van Voorhis & Van Voorhis (John Van Voorhis* of counsel), for Richard V. Dow, appellant-respondent.

*Morton L. Bittker,* guardian ad litem for Margaret Dow and another, appellants-respondents.

*Harry P. Messina, Jr.,* guardian ad litem for unborn distributees of Leland B. Dow, Jr., and Vaughan Dow, respondents-appellants.

*Hickey, McHugh & Garlick* and *Dow, Lohnes & Albertson (E. James Hickey* of counsel), for trustees.

*Nixon, Hargrave, Devans & Doyle (George Hamlin, IV,* of counsel), for University of Rochester and others, respondents.

*Swan, Fitch, Marron & Pembroke (Russell Marron* of counsel), for Vaughan Dow, respondent.

*Louis J. Lefkowitz, Attorney-General (Peter Borok* of counsel), for ultimate charitable beneficiaries, respondent.

*Stewart D. Davis,* guardian ad litem for Rees T. Lee and another.

*J. Coyne O'Brien,* guardian ad litem for Johanna Tayloe Crane and another.

*Harter, Secrest & Emery (John Swett* of counsel), for Marine Midland Bank-Rochester, respondent.

MAHONEY, J. Appellants Richard V. Dow, individually, and Morton L. Bittker, as guardian ad litem for Elizabeth and Margaret Dow, appeal from a decree of Surrogate's Court, Monroe County dated October 14, 1975 in a proceeding brought by the trustees under the will of Fayette B. Dow seeking a determination of the validity, construction and effect of certain dispositions of property contained in the testator's will and the resolution of certain questions regarding trust administration and apportionment of estate taxes. A cross appeal has also been filed by Harry P. Messina, Jr., as guardian ad litem for the unborn distributees of Leland B. Dow, Jr. and Vaughan Dow. The cross appeal is limited to the decree's denial of interest on directed reimbursement of sums to the trustees by Richard V. Dow and Vaughan Dow, representing advanced payments of their respective apportioned inheritance taxes paid to the District of Columbia.

The testator, Fayette B. Dow, a resident of the Disrict of Columbia, died in Monroe County, New York on December 10, 1962. His last will and testament dated April 10, 1961 was thereafter duly recorded in the Office of the Register of Wills for the District Court for the District of Columbia with appointment of nominated executors therein. The will created a trust for the benefit of various individuals and institutions and designated the Genesee Valley Union Trust Company (predecessor to Marine Midland Bank of Rochester), Leland B. Dow, Jr., Vaughan Dow and Richard V. Dow as trustees of the trust fund created under said will. The trustees have been administering the trust fund since March 17, 1965 when the assets were initially transferred to them by the executors. All assets from the inception of the trust have been in the physical possession of Marine Midland Bank of Rochester in Monroe County, New York.

Surviving the testator at the time of his death were his two nephews, Leland B. Dow, Jr. (Leland) and Vaughan Dow (Vaughan), being sons of testator's deceased brother, Leland Dow, and his grandnephew Richard V. Dow (Richard), son of Leland B. Dow, Jr. Also surviving the testator were Leland's three daughters, Ann Dow Lee, Dorothy Dow Crane and

Virginia Taylor Dow Wimmer; Richard's two daughters, Elizabeth Dow and Margaret Dow; Ann Dow Lee's six children, Rees, Richard, Peter, Marcus, Gerald and Bayless; and Vaughan's son, David V. Dow.

Under paragraph sixth of his will, testator devised and bequeathed his residuary estate to his nominated trustees to be held in trust and designated as the "Brown Hill Farm Trust Estate," (Trust). Ten percent of the annual net income of the Trust is to be accumulated and added to principal and a fixed cash annuity is to be paid to testator's secretary. The remainder of the Trust income is to be divided into two parts and paid in the following manner: the first part, consisting of 20% of the remaining net income, is to be distributed in equal amounts to the testator's nephews, Leland and Vaughan, "during their lives". The second part, consisting of 80% of the remaining net income, is to be entered into a separate account to be known as a "Brown Hill Farm Account" (Account) to be distributed as follows: (1) $1,000 outright to Richard; (2) $2,400 per year to Richard; (3) if income is available after payment of (1) and (2) above, then $1,000 a year for five years is to be paid into an account for Richard until a fund of $5,000 is available to him; (4) if income is available after the payment of (1), (2) and (3) above, then $2,400 per year is to be paid to Richard; and (5) up to $1,000 is to be added to each one of the three college funds established at Amherst College, University of Rochester and Vassar College. Any income not paid out pursuant to the foregoing shall be added to the principal of the Trust fund up to $3,000 per year. The remainder, in excess of $3,000, is to be divided into three equal parts to be distributed to three groups as follows: testator's two nephews, Leland and Vaughan, and his grandnephew Richard, "divided equally" (group I); the living issue of his nephews and grandnephew, "divided equally"(group II); and the three college funds, "divided equally" (group III).

The "Trust" is to terminate upon the death of the last survivor of testator's nephews, grandnephew and such of the issue of his nephews and grandnephew who are living at the time of testator's death. Specific bequests are made to the three college funds, with the remainder to be paid to all the lineal issue of testator's nephew and grandnephew, "in equal per capita shares".

The death of Leland precipitated the instant proceeding for the judicial settlement of the trustees' intermediate account

for the period commencing with the inception of the Trust on March 17, 1965 and ending with cotrustee Leland's death on March 24, 1973. In addition, the resolution of various presented questions was sought calling for construction of provisions primarily contained in the afore-summarized paragraphs sixth, seventh and eighth of the will as well as the determination as to whether the issues raised in this proceeding are governed by the law of the State of New York or the District of Columbia. By preliminary decision dated April 14, 1975 the Surrogate determined that the law of the District of Columbia was applicable to all questions of will construction and apportionment of estate taxes with the law of New York being applicable to all questions of trust administration *(Matter of Dow,* 81 Misc 2d 506). Thereafter, by decision dated August 14, 1975 the Surrogate rendered his determination of the remaining issues raised in the proceeding.

In view of the multifaceted issues presented, a more comprehensive understanding might well be promoted by a categorized analysis and consideration of the various disputed decretal provisions of the decree with the contentions of the objecting parties.

ISSUE I—WHETHER THE LAW OF NEW YORK OR THE DISTRICT OF COLUMBIA GOVERNS THE INTERPRETATION AND CONSTRUCTION OF THE WILL PROVISIONS.

The Surrogate correctly determined that all questions relating to the construction and interpretation of the will, as well as all questions relating to the apportionment of estate taxes, are governed by the law of the District of Columbia, premised upon subdivision (e) of section 3-5.1 of the Estates, Powers and Trusts Law. Subdivision (e) of said section provides: "(e) Interpretation of a testamentary disposition of personal property shall be made in accordance with the local law of the jurisdiction in which the testator was domiciled at the time the will was executed." In conjunction with the application of subdivision (e), reference to the definitional provisions of section 3-5.1 (subd [a], par [6]) defines "interpretation" as follows: "(6) 'Interpretation' relates to the procedure of applying the law of a jurisdiction to determine the meaning of language employed by the testator where his intention is not otherwise ascertainable." Such provisions, therefore, focus attention upon the four corners of the testamentary document for determination of whether any expression of intention by the testator is therein contained. In connection with such review of the will,

provision contained in subdivision (h) of section 3-5.1 of the Estates, Powers and Trusts Law bears upon the ultimate resolution of the question, whereby it is provided: "(h) Whenever a testator, not domiciled in this state at the time of death, provides in his will that he elects to have the disposition of his property situated in this state governed by the laws of this state, the intrinsic validity, including the * * * interpretation * * * of any such disposition is determined by the local law of this state."

Appellant Richard citing said subdivision (h) directs attention to the following provision contained under paragraph sixth, II (11) of testator's will, wherein it was provided: "If there should be any disagreement between my trustees as to the proprieties of any payments under this Paragraph SIXTH II (3) (4) (5) (6) (7) (8) of my will I request that the judgment of the Genesee Valley Union Trust Company, as trustees, shall be accepted but not to the extent of invaliding the right of either nephew, or his issue, to apply to an appropriate court for final determination. For this purpose I request that a probate court located in Monroe County, New York, where the farm is located, take jurisdiction." This provision Richard contends constitutes an expression of an "ascertainable" intention and election of New York law for governing interpretation and construction of the will by the testator rendering subdivision (e) of section 3-5.1 of the Estates, Powers and Trusts Law inapplicable, with subdivision (h) thereof controlling. Such contention, when viewed in conjunction with provision contained in paragraph fifteenth of the will, overstates such conclusion to be drawn from the afore-quoted provisions of paragraph sixth, II (11). Under paragraph fifteenth of the will it is provided: "FIFTEENTH. Inasmuch as this Will will be probated in the District of Columbia and the validity and proper interpretations of the trusts hereby created will be determined by the laws of the District of Columbia, which is my legal residence and domicile, I request, to the extent that legal services are considered necessary, that my associate Clair L. Stout, or, in case of his decease, such one of my partners as the firm may designate, be employed as Attorney for the executors and trustees, and that no other attorneys be employed at the expense of my estate." Such recitation by testator in his will constitutes an affirmative expression of understanding by him in the drafting of the various provisions of the will that the governing law was to be the law of the

District of Columbia. Given such anticipation that one's language will be construed according to the precedent of a given jurisdiction, it logically follows that one will express his intentions in the terms of such precedents to obviate misunderstanding. Paragraph fifteenth clearly evidences testator's contemplation that the precedent law and canons of construction of the District of Columbia were to apply. Thus, ascertainment of testator's intention in connection with the dispositional provisions contained in his will dictates application of the law of the District of Columbia. Upon such conclusion, therefore, testator's language contained in paragraph sixth, II (11) constituted, at most, a choice of forum as opposed to an election of choice of law under subdivision (h) of section 3-5.1 of the Estates, Powers and Trusts Law.

Corollary to this determination, any issue concerning the apportionment of estate taxes is also to be governed by the law of the District of Columbia under the well-established doctrine that, absent testamentary expression to the contrary, New York courts will apply the domiciliary law of the decedent in a proceeding where instructions are sought concerning apportionment of taxes (Matter of Huntington, 14 AD2d 312, 316; Matter of Gato, 276 App Div 651, 655, affd 301 NY 653).

Having so concluded as to the applicability of the law of the District of Columbia to resolution of the issues raised on this appeal, it is to be noted that the District of Columbia upon its incorporation adopted the statutes and common law of the State of Maryland. The District Courts thereafter looked to the decisions of Maryland courts throughout the nineteenth century. In 1901 this reliance was codified in the enactment of provisions found in section 49-301 of the District of Columbia Code (see, also, 15A CJS, Common Law, § 18; 27 CJS, District of Columbia, § 2, subd [d]). Subsequent decisional interpretation thereof by the District Courts has construed such enactment as according Maryland decisions, while not completely controlling, nevertheless, of great weight, of greater weight than the decisions of other States (Matter of Parnell, 275 F Supp 609, 610; Gerace v Liberty Mut. Ins. Co., 264 F Supp 95, 97). On appeal of Matter of Parnell (supra), the Circuit Court of Appeals in affirming cautioned, however, that "blind allegiance" is not required "particularly as to the common law" (White v Parnell, 397 F2d 709, 710, n 1). It is with such guidelines that we undertake resolution of instant remaining issues, bearing in mind that in construing a will, we look to

the intent of the testator as manifested by the will as a whole. (See, e.g., *Matter of Stone,* 463 F2d 1316, 1318; *Matter of Symonds,* 424 F2d 928, 930; *Hall v Killingsworth,* 253 F2d 43, 44; *Stone v Stokes,* 163 F2d 704, 706.)

ISSUE II — DISPOSITION OF LELAND'S 10% OF TRUST IN-COME UNDER PARAGRAPH SIXTH, II (3).

Paragraph sixth, II (3) of the will provides as follows:

"(3) to divide the remainder of said income into two parts, one of twenty per cent (20%), the other of eighty per cent (80%).

"to distribute to my nephews Leland B. Dow, Jr., and Vaughan Dow the aforesaid twenty per cent (20%) of said net income, in equal amounts, and in approximately equal quarterly payments, during their lives. This gift to my said nephews is contingent upon their executing and delivering to my grandnephew, Richard Vaughan Dow, quit claim deeds to all of those parts of the said Brown Hill Farm properties which I deeded to them several years ago. If they or either of them should fail to execute and deliver quit claim deeds to such properties the aforesaid gifts to them shall be eliminated from this will and shall be void. My experience with the foresaid farm properties conclusively indicates that the said farm cannot be operated successfully with divided ownership of the properties."

While no explicit direction is contained in paragraph sixth for disposition of the respectively allocated 10% income therein provided upon the death of Leland and/or Vaughan, the contentions of the various parties here asserted for alternate disposition of the income in question are premised upon the unfounded assumption that the will makes no provision therefor. The Surrogate correctly concluded that the testator had provided for disposition of Leland's income interest under the formulation embodied in paragraph seventh of the will which reads as follows: "SEVENTH. Any income from this BROWN HILL FARM ACCOUNT not paid out or payable by the Trustees for the purposes of Paragraphs SIXTH II, (1) (2) (3) (4) (5) (6) (7) (8) and Paragraph SIXTH (a) (b) (c) above or any other foregoing provision of this Will, at the end of any calendar year, approximately, shall be added to the principal of the trust fund and remain a part thereof; PROVIDED HOWEVER, that if any such remaining income shall exceed Three Thousand Dollars (§ 3,000) in any year I direct that my trustees divide such excess income into three equal parts and distribute such

equal parts to three groups, as follows: One to my two nephews, Leland B. Dow, Jr., Vaughan Dow, and my grandnephew Richard Vaughan Dow, divided equally; one to the living issue of my said nephews, and grandnephew, divided equally; and one, divided equally, to Amherst College (for the FRANK FOWLER DOW FUND), the University of Rochester Medical School (for the DR. FRANK FOWLER DOW and HARRIET B. DOW SCHOLARSHIP FUND) and to Vassar College—for the LILLA THOMAS ELDER (1873) and CAROLINE B. DOW (1880) SCHOLARSHIP FUND."

While it is true, as the Surrogate pointed out that reference is made in paragraph seventh to the Brown Hill Farm *Account,* the determination of testator's obvious misstatement in the use of the word "Account" is not only rational but self-evident. Under no circumstances could the income allocated to the Brown Hill Farm *Account* created under paragraph sixth, II (4) have been used to satisfy payments directed by paragraph sixth, II (1), (2) and (3). Such construction as determined by the Surrogate thereby avoids rendering meaningless such reference as made in paragraph seventh, and properly concludes that Leland's paragraph sixth, II (3) income shall be added to the principal of the Brown Hill Farm *Trust Estate* upon his death to be administered under the provisions of paragraph seventh of the will.

ISSUE III—PER STIRPES OR PER CAPITA DISTRIBUTION OF LELAND'S GROUP I INCOME AND GROUP II INCOME.

Next for consideration is the Surrogate's determination in disposing of Leland's group I income and the group II income under paragraph seventh of the will. Leland's group I income derives from the provisions of the will which direct that one third of the excess income over $3,000 be paid to testator's nephews, Leland and Vaughan, and grandnephew Richard, "divided equally", and that, in the event either nephew died during the duration of the "Trust", his share "shall be paid to his lineal descendants divided equally". The only distinction in the dispositional wording of the "group II" devise is the use of the phrase "living issue" as opposed to "lineal descendants". The Surrogate held in both instances that distribution was to be per capita rather than per stirpes.

The propriety of such determination by the Surrogate under the law of the District of Columbia is rendered particularly difficult by virtue of the lack of statutory and decisional precedent of the District from which conclusive resolution can

be premised. Preliminarily, it is to be recognized that the rule of English common law, as exemplified by *Davenport v Hanbury* (3 Ves Jr 257; 30 Eng Rep 999 [Ch, 1796]), is that a gift to descendants was a gift to all descendants of whatever generation, per capita.[1] Commencing, however, with *Jackson v Jackson* (153 Mass 374), the so-called Massachusetts rule evolved holding that when, by a will, personal property is given in trust to pay the income to a person during life and on the death of such person to pay the principal sum to his issue then living, it was the presumed intention that the issue should include all lineal descendants and that they should take per stirpes, unless from some other language of the will a contrary intention appears. Adoption of the so-called Massachusetts rule by various States in respective judicial pronouncements thereafter followed, including the State of Maryland *(Clarke v Clarke,* 222 Md 153). It has also been decisionally established in Maryland that even the addition of phrases importing equality such as "share and share alike" does not require per capita distribution. In *Kelly v Mercantile-Safe Deposit and Trust Co.* (262 Md 626) for example, a devise to the "issue of my daughter, share and share alike", was held to require a stirpital distribution with the observation being made that the addition of the phrase importing equality related to equality of the primary distribution among the stocks and not to equality of distribution among those who take.

However, research of decisional precedent of the District of Columbia discloses no such declaratory adoption of the so-called Massachusetts rule favoring stirpital distribution, absent expression of intent to the contrary. We do, however, glean some insight from *Matter of Robins* (38 F Supp 468 [Dist Ct, DC, 1941]), wherein the court, although finding that stirpital distribution was there intended, implied that a different result would have followed had words importing an equal distribution been used by the testator. Therefore, while not unmindful of the limited deference to be extended to the decisional law of Maryland, considering the substantive issue here presented involving rejection of a common-law principle, and, dicta expressed by the District Court for the District of

1. For a discussion of the historical background of the English common-law rule, see: Schnebly, Testamentary Gifts to "Issue", 35 Yale LJ 571, 591; Note, Distribution to "Issue", 21 Md L Rev 242; Comment, Meaning of "Issue" in Testamentary Gifts, 37 Mich L Rev 630; 4 Page, Wills (Bowe ed, 1961), § 36.15, p 569.

Columbia in the *Robins* case, we cannot conclude that the Surrogate's determination here made directing per capita distribution was in error.

ISSUE IV—THE DATE OF CLOSURE OF CLASS INCOME BENEFI-CIARIES OF GROUP I AND GROUP II INCOME.

The issue presented relates to the date of closure of the class of "lineal descendants" and "living issue" among whom income is to be "divided equally" under the provisions and contingencies contained in paragraph seventh of the will. The Surrogate correctly determined that the class of lineal descendants sharing in group I and group II income includes all "lineal descendants" and "living issue" born during the duration of the Trust requiring annual determination by the trustees of the existence and identity of the respective members of the class. In determining the maximum membership of a class, the general rule is stated to be that the maximum membership is determined when the time for distribution has arrived (Simes and Smith, The Law of Future Interests, § 634, p 69). Where there is a gift of income, however, it is said that no rule of convenience need be considered since no inconvenience is experienced by admitting new members to the class after distribution has begun (Simes and Smith, The Law of Future Interests, § 649, p 99; accord Restatement, Property [1940], § 295, comment i). In the absence of any District of Columbia or Maryland law on the issue, the foregoing authorities are entitled to weight. We, therefore, conclude the Surrogate correctly determined that the class gifts of group I and group II income under paragraph seventh of the will do not close until the termination of the Trust.

ISSUE V—DISPOSITION OF RICHARD'S GROUP I INCOME ON HIS DEATH.

Preliminarily we note that the Surrogate was correct in determining this issue even though distribution of Richard's share of group I income will not occur until his death. Not only does a present determination obviate future legal expense, it is also interrelated with and bears directly upon the more pressing question of whether Richard's issue would take group I income as lineal descendants of Leland at Leland's death. If Richard has an absolute interest in group I income rather than a life estate, or, if his issue take as lineal descendants of Richard, then a determination that Richard's issue also take as lineal descendants of Leland would result in Richard's issue taking a double share. Construction of the

will's entire paragraph, including whether Richard takes only a life interest in group I income is necessary, therefore, in order to accord complete determination of construction questions which have here arisen with respect to this portion of the will.

The testamentary language in question reads as follows:

"I direct that my trustees divide such excess income into three equal parts and distribute such equal parts to three groups as follows: One to my two nephews, Leland B. Dow, Jr., Vaughan Dow, and my grand-nephew Richard Vaughan Dow, divided equally * * *

"If either *nephew* shall be deceased during the life of this Trust his share under this Paragraph shall be paid to his lineal descendants divided equally." (Emphasis added.)

The Surrogate found that since this language made no provisions for disposition of Richard's share upon his death, the testator intended that Richard have merely a life estate in the group I income, further noting that a construction of the provision in question which would result in Richard's share being paid to his lineal descendants would upset the testator's plan of equality of distribution inasmuch as the issue of Richard are also the issue of Leland, and, as such, would then take double shares. Such interpretative construction by the Surrogate was correct. Although the bequest to "my two nephews, Leland * * * Vaughan * * * and my grandnephew Richard" appears to be an absolute gift, the language in the paragraph providing for disposition of income in the event of the *nephews'* deaths, indicates that their gifts were intended to be only life estates. While there is no similar directive concerning the disposal of Richard's group I income upon his death, in view of the general scheme of the testator in making more or less parallel gifts to the three primary beneficiaries— Leland, Vaughan and Richard—testator's failure to provide for such disposition upon Richard's death does not imply that Richard take an absolute interest; but, rather, in accord with the general scheme of the will evidences an intent on the part of the testator to give Richard a life estate in the income, comparable to that life estate given his nephews, Leland and Vaughan. As for disposition of Richard's share of group I income upon his death, the Surrogate, absent any decisional guidance to be found from the District of Columbia, invoked the New York principle of cross remainders *(Hadcox v Cody,* 213 NY 570) and determined that the testator intended that

Richard's share of income pass to Leland and Vaughan in equal shares, or, if they be dead, to their lineal descendants, thereby avoiding intestacy with respect thereto. On the facts here presented, such determination by the Surrogate was not in error.

ISSUE VI—EXCLUSION OF RICHARD FROM ANY SHARE IN GROUP II INCOME AS LINEAL DESCENDANT OF LELAND AND LIMITING RICHARD'S ISSUE'S SHARE IN GROUP II INCOME AS LINEAL DESCENDANTS OF RICHARD ONLY.

Nor did the Surrogate err in determining that Richard was not entitled to share in group II income upon Leland's death and that each child of Richard will take group II income as lineal descendants of Richard only and not as lineal descendants of Leland. In construing a will provision, the testator's intention should be determined by construction of the whole will and not confined to detached paragraphs; and where such intention is apparent, it should be given effect even though to do so involves rejection of the literal meaning of particular words (*Stone v Stokes,* 163 F2d 704, *supra; Hall v Killingsworth,* 253 F2d 43, *supra).* In view of the general scheme throughout testator's will of providing for the three primary beneficiaries, Leland, Vaughan and Richard, and their issue, on comparable equal basis, the finding that the term "living issue", as used by the testator in disposing of group II income, did not include Richard or his issue was correct. To construe the term "issue" to include Richard and his issue would result in their taking double shares, not here intended by testator.

ISSUE VII—REIMBURSEMENT TO TRUSTEES FOR INHERITANCE TAXES PAID.

Among the objections interposed by Richard in his individual capacity to the account here filed was the listing as a Trust asset of an account receivable representing a debt owed to the Trust by Richard for taxes paid on his behalf by the executors of the estate. There being no provision in the will indicating an intention to exonerate the beneficiaries from the obligation to pay inheritance taxes, each was liable under the District of Columbia State tax apportionment statute to pay the inheritance taxes assessed against his distributive share of the estate (DC Code, § 47-1604). Under District of Columbia law, beneficiaries such as Richard, taking a life interest in property from the estate, likewise must bear inheritance tax liability (DC Code, § 47-1607). Although the liability for the payment of the tax is imposed directly upon the estate, the

taxes paid by the personal representatives are chargeable against each distributive share or legacy (DC Code, § 47-1604), and, if not paid by the beneficiary within 15 months after the date of death of decedent, the personal representative may, upon order of the United States District Court, sell for cash so much of the distributive share or legacy as necessary to pay the tax (DC Code, § 47-1605). It is also provided under the District of Columbia Code that any person aggrieved by an inheritance tax assessment made by the District of Columbia may appeal the assessment within six months after the payment of the tax (DC Code, § 47-2403).

Richard here alleges that an erroneous District of Columbia tax assessment, bearing upon his proportionate share of the tax, was paid by the executors and distribution of the estate assets was effected before recovery of the respective beneficiary's share of the tax burden. This action, he contends, forecloses recovery by the trustees in this proceeding. It is a recognized general rule that tax assessments issued by the administrative authorities of other States which are not reduced to judgments will not be accorded either full faith and credit or comity (Ehrenzweig, Conflict of Laws, § 37, p 134; *City of Philadelphia v Cohen,* 11 NY2d 401; *State of Colorado v Harbeck,* 232 NY 71). Notwithstanding such principle, however, the Surrogate here properly held that the trustees are merely collecting a debt due the Trust, rather than seeking enforcement of a foreign tax assessment. In the instant case, the executors had the power under section 47-1604 of the District of Columbia Code to charge off against each beneficiary's legacy his respective share of inheritance taxes paid by the estate. This was not done before distribution of the assets, and, instead, the respective debts to the estate of the various beneficiaries were listed as assets under the category of accounts receivable in the final accounting rendered by the executors on November 3, 1966. There appears to be no law to support Richard's contention that recovery by the executors under sections 47-1604 and 47-1605 of the District of Columbia Code is the sole method by which the legatees' share of inheritance taxes may be collected once the estate has borne the liability in the first instance. It is not unreasonable to conclude that such debts may be carried forward as due to the testamentary trust, created by the transfer of the residuary assets of the estate, after a final accounting is rendered by the executors. In the factual context of this case, therefore, the

reimbursement here sought, as reflected in the account as filed, constitutes a recoupment of a debt owed by both Richard and Vaughan for their respective proportionate shares of their inheritance tax liability which the trustees have a duty to collect as opposed to enforcement of a foreign tax liability.

We note, however, that in the decretal provision directing reimbursement by Richard and Vaughan of their respective unpaid portion of the inheritance tax advanced on their behalf, interest thereon is dispensed with by the Surrogate "in view of the uncertainty regarding the obligation to make these payments which has plagued the trustees and the trust since its inception". While it is to be recognized that in a proceeding of an equitable nature such as this, interest and the rate thereof rests in the court's discretion (CPLR 5001, subd [a]); nevertheless, the record here does not disclose such circumstances as to sustain the Surrogate's determination warranting dispensation of interest. In view of the trustees' charge of interest at the rate of 3.72% per annum against all other beneficiaries on their respective indebtedness for inheritance taxes paid, we must conclude that the Surrogate abused his discretion in not charging the same rate of interest against the indebtedness owed by Richard and Vaughan.

We are not unmindful of objection raised by non-appealing Vaughan to our review of the interest aspect of the Surrogate's decree as to him by reason of the untimely notice of cross appeal served upon him by the guardian ad litem for unborn distributees of Leland B. Dow, Jr. and Vaughan Dow. However, the timely service of notice of appeal by the guardian ad litem on behalf of infants Elizabeth and Margaret Dow from all portions of the decree, with certain exceptions not here relevant, preserved the review status of the interest issue.

The decree of the Surrogate should, therefore, be modified to the extent of directing payment of interest at the rate of 3.72% per annum from June 14, 1964 (being the same rate of interest and determinative date applied to reimbursement of proportionate estate tax secured from the other beneficiaries herein) by Richard and Vaughan on the repayment of their respective indebtedness for unpaid inheritance taxes and, except as so modified, in all other respects affirmed.

MOULE, J. P., CARDAMONE, SIMONS and DILLON, JJ., concur.

Decree unanimously modified in accordance with opinion by

MAHONEY, J., and as modified, affirmed with costs to all parties filing briefs payable out of the estate.