388 A.2d 666

McDOWELL NATIONAL BANK OF SHARON, Pennsylvania,
Trustee under the Will of William A. Applegate, Deceased,

v.

Katherine APPLEGATE, William E. Applegate, Susan L.
Applegate, Robert M. Applegate, Jennifer Lee
Applegate and Vivian Rose Applegate.

Appeal of Jennifer Lee APPLEGATE and Vivian
Rose Applegate.

Supreme Court of Pennsylvania.

Argued March 7, 1978.

Decided June 5, 1978.

302

John G. Kish, Pittsburgh, for appellants.

Cyril T. Garvey, Sharon, for Katherine Applegate and Susan Applegate.

Edward B. Madden, Sharon, for McDowell Nat. Bank of Sharon, Pa.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Testator William A. Applegate executed a will on November 25, 1970, devising the residue of his estate to McDowell National Bank as trustee to divide certain properties "into two equal parts and [to] hold one part in trust for the use and benefit of my daughter, Donna Jean White, and her children and [to] hold the other part in trust for the use and benefit of the children of my son, William K. Applegate." The will further provided that the trust established for the children of William K. Applegate "shall continue until the youngest child of the said William K. Applegate shall have attained the age of twenty-five years at which time the said trust shall terminate and the corpus thereof together with any accumulated income therefrom shall be divided equally among so many children as there are for whom the trust was established." A corresponding clause directed that the trust established for Donna Jean White and her children "shall continue until the death of my daughter, Donna Jean White, and so long thereafter as is necessary for her youngest child to attain the age of twenty-five years at which time the said trust shall terminate and the corpus thereof together with any accumulated income therefrom shall be divided equally among so many as there are for whom the trust was established." Thus, the instrument provided that the trustee distribute income from the corpus to Donna Jean White and the children of both Donna Jean White and William K. Applegate and divide the corpus of each trust among the grandchildren of testator when the youngest reached the age of twenty-five.

Testator died on October 9, 1972. At that time, William K. Applegate was married to his first wife by whom he had four children, including appellees Katherine Applegate and Susan L. Applegate. On October 18, 1973, Jennifer Lee Applegate was born out of wedlock to William K. Applegate and Barbara Ann Mason. On February 4, 1974, William K. Applegate obtained a divorce from his first wife and subsequently married Barbara Ann Mason. On July 2, 1975,

William K. Applegate adopted Vivian Rose Applegate, the daughter of Barbara Ann Mason, his second wife. On February 25, 1976, the trustee petitioned the orphans' court division of the court of common pleas for a declaratory judgment to determine whether Jennifer Lee Applegate and Vivian Rose Applegate were members of the class of "children" entitled to benefits under testator's will. The orphans' court concluded that the class of beneficiaries closed upon the death of testator and therefore included only the four children born to William K. Applegate by his first wife because Jennifer Lee Applegate and Vivian Rose Applegate became children of William K. Applegate after testator's death. We believe the orphans' court erred and therefore vacate its decree and remand for further proceedings.*

▆▆▆ By making a gift to a group of individuals uncertain in number at the time of the gift who are to be determined at a future time to take in equal shares depending on the number of takers, testator created a class gift. See *Estate of Clarke,* 460 Pa. 41, 331 A.2d 408 (1975); *Moyer Estate,* 389 Pa. 228, 132 A.2d 667 (1957). The only question here is the scope of the class. As in any matter involving interpretation of a will, the intent of the testator, if it can be ascertained, must prevail. *Estate of Sykes,* 477 Pa. 254, 383 A.2d 920 (1978); *Blough Estate,* 474 Pa. 177, 378 A.2d 276 (1977); *Hamilton Estate,* 454 Pa. 495, 312 A.2d 373 (1973). To determine this intent, "a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding execution of the will and other facts bearing on the question." *Estate of Sykes,* 477 Pa. at 257, 383 A.2d at 921; accord, *Hamilton Estate,* supra; *Chambers Estate,* 438 Pa. 22, 263 A.2d 746 (1970). This intent "must appear with reasonable certainty, such that there can be little doubt of his intent." *Estate of Sykes,* supra. Only when the intent does not appear with reasonable certainty will a court resort to rules of construc-

* We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1977).

tion. Id. Without specifying the language of the will, the circumstances or any other supporting facts upon which it relied, the orphans' court concluded that testator intended to exclude from the class of beneficiaries any children not ascertained at the time of his death.

■■ Testator did not directly express his intent on this matter. He did not specify either that the class of beneficiaries was to close or remain open upon his death. The language of the will, however, and the scheme of distribution indicate that testator meant to include children not ascertained at the time of death.

The strongest evidence of testator's intent to leave the class open after his death lies in the scheme of distribution. Testator expressly provided:

"Unless terminated at an earlier date under the foregoing provisions, this trust shall cease twenty (20) years after the death of the last surviving of the following persons, namely, myself and all my lineal descendants living at the time of my decease, and distribution of shares shall then be made to persons then entitled to income therefrom."

By this clause, testator sought to guard against application of the Rule of Perpetuities, which voids interests which do not vest until more than twenty-one years after lives in being. See generally, e. g., *Lockhart's Estate,* 306 Pa. 394, 159 A. 874 (1932); *Scott's Estate,* 301 Pa. 509, 152 A. 560 (1930); *Geissler v. Reading Trust Company,* 257 Pa. 329, 101 A. 797 (1917). If testator intended the class to close upon his death, the need for this clause would evaporate, because the interests provided in the trusts would vest immediately on his death, long before any violation of the Rule against Perpetuities. Unless testator intended to include children of his daughter and son not ascertained until after his death, the clause protecting against application of the Rule against Perpetuities would be meaningless. We will not adopt an interpretation needlessly rendering nugatory some provision of the instrument. *Hamilton Estate,* supra; *Collin's Estate,* 393 Pa. 519, 143 A.2d 45 (1958).

Other language in the will reinforces this conclusion. Throughout the relevant portions of the will, testator referred to beneficiaries other than his daughter, Donna Jean White, as "children" of his daughter and his son, William K. Applegate. This Court has held that where a testator employs a class designation, his intent is to include "not only those known to him but all that may come into the class described unless there is some contrary intent manifested." *Earle Estate*, 369 Pa. 52, 58, 85 A.2d 90, 93 (1951) (bequest to male children of testator's sons bearing family name included grandsons born after testator's death); accord, *Wanamaker's Estate*, 335 Pa. 241, 6 A.2d 852 (1939) (bequest to "grandchildren" included all grandchildren, including those born after testator's death); cf. *Robinson's Estate*, 266 Pa. 251, 109 A. 924 (1920) ("The use of the word 'children' necessarily implies all children and an intention to treat all alike," including son estranged for twenty-two years).

> "It is well settled that if a person qualifies within the exact meaning of language describing a class he will be held to be a member of that class unless other language in the instrument expressly or by clear implication indicates a contrary extent."

*Earle Estate*, 369 Pa. at 58, 85 A.2d at 93 (citing cases).

Testator specified that under each trust, the principal when distributed would be shared equally "among so many children as there are for whom the trust was established." This language strongly suggests that testator sought to include every child of his son and daughter. See *Earle Estate*, supra (bequest to "each and every" beneficiary included grandsons born after testator's death).

This case is indistinguishable from *Littlestown National Bank v. Little*, 28 D. & C.2d 498 (Orph. Ct. Adams Cty.1962), where the testator's will provided:

> "All the rest, residue, and remainder of my assets I devise and bequeath to the Littlestown National Bank in trust . . . to pay the annual net income therefrom to the children of David S. and Marian Little . . . in equal shares until such time as they arrive at the age of 21

years, at which time the trustee shall distribute the net corpus of said fund to the children of David S. and Marian Little."

The court held that the testator intended the class to remain open after his death. By contrast, the present case differs significantly from those holding that the testator intended to limit the class of beneficiaries to those living at the time of his death. In *Smith's Estate*, 226 Pa. 304, 75 A. 425 (1910), a bequest to grandchildren attaining age twenty-one was specifically limited to those "living at the time of my death." Cf. *Wallace's Estate*, 299 Pa. 333, 149 A. 473 (1930) (rights of beneficiaries determined as of time of death where testator defined rights of beneficiaries by reference to his own death).

We therefore believe that testator did not intend to close the class of beneficiaries upon his death. No language or circumstances indicate a contrary intent. See *Earle Estate*, supra; cf. *Estate of Clarke*, supra (bequest to named grandchildren did not exclude after-born grandchildren where will contained no indication of intent to discriminate).

Appellees argue that the class closed upon the death of testator because the bequest was to take effect in enjoyment immediately upon that event. Relying on the rule of construction that "where nothing appears to the contrary the members of the class will be ascertained as of the date of the death of the testator," *Trattner Estate*, 394 Pa. 133, 136, 145 A.2d 678, 680 (1958), and the Probate, Estates and Fiduciaries Code, Act of June 30, 1972, P.L. 508, § 2, 20 Pa.C.S.A. § 2514(4), (7) and (8) (1975), appellee contends that only children in the class at the time of testator's death have an entitlement to trust benefits. Appellees' argument fails on two counts.

First, the doctrine upon which appellees rely, frequently called the "rule of convenience," is a rule of construction invoked only where the will does not indicate a contrary intent. *Earle Estate*, supra. Here, testator's will, including the provision guarding against application of the Rule against Perpetuities and language inconsistent with an

intent to discriminate, demonstrated testator's intent to leave the class open after his death. Thus, the rule pressed by appellees does not apply. Section 2514 of the Probate, Estates and Fiduciaries Code likewise has no bearing on this case, for it provides rules of interpretation applicable only when intent does not appear in the instrument.

Second, appellees appear to assert that even if a contrary intent does appear in the will, the class closes at the time of death as a matter of law. Their argument is that since some members of the class had an interest in current trust income they could properly demand at testator's death, the class closed at that time. Although no beneficiary could receive a share of the principal until long after testator's death when the youngest grandchild attained age twenty-five, each was entitled to a share of interest on the principal upon testator's death.

Although beneficiaries living at the time of testator's death have a vested interest in current trust income, the class may still remain open after testator's death for purposes of determining membership in the class receiving the principal upon distribution and income earned until distribution of the principal.

"Under some circumstances, such as . . . when the class is given the income from the subject matter of the gift prior to the time they attain the designated age, the share of each individual class member may be deemed vested in the sense that his death before attaining the designated age will not defeat his interest. The fact that the share of each class member is deemed vested in this sense should not prevent persons within the class description who are born before a share is actually distributable from being included."

5 American Law of Property, § 22.44 at 372 (Casner ed. 1952); accord, Restatement of Property, § 295, comment (i) (1940). Thus, in *Lux v. Lux*, 109 R.I. 592, 288 A.2d 701 (1972) (citing Restatement), the testator left property in trust for grandchildren, whereby the beneficiaries were to receive income from the trust until the youngest reached the

age of twenty-one years, when the corpus would be distributed to the class members. The Supreme Court of Rhode Island held that in the absence of any intent to the contrary, each ascertained member of the class would, upon testator's death, receive a proportionate share of the trust income as it accrued, but that the class did not close for purposes of determining entitlement to the corpus until the time of distribution of the corpus. As the class increased until the time of distribution of the corpus, the share of income each class member received decreased accordingly. Accord, *Will of Dow*, 55 A.D.2d 323, 390 N.Y.S.2d 721 (App.Div. 4th Dept. 1977) (citing Restatement); *Littlestown National Bank v. Little*, supra (citing Restatement); cf. *Earle Estate*, supra (distribution date for determining closing of class is time of distribution of principal). "Where there is a gift of income . . . no inconvenience is experienced by admitting new members to the class after distribution has begun." *Will of Dow*, 55 A.D.2d at 334, 390 N.Y.S.2d at 729.

We therefore hold that the class of beneficiaries remained open after testator's death. We note that the parties raised in the orphans' court the issue whether, even if the class had not closed at testator's death, Vivian Rose Applegate and Jennifer Lee Applegate were eligible beneficiaries. On this record, we express no view on that question. We note also that the court did not appoint a trustee ad litem for children not yet ascertained who might claim entitlement to the benefits of testator's trusts. We therefore direct the orphans' court on remand to appoint a trustee ad litem for this purpose. 20 Pa.C.S.A. § 751(5)(IV) (1975); *Curry Appeal*, 390 Pa. 81, 134 A.2d 497 (1957); *Kenna Estate*, 348 Pa. 214, 34 A.2d 617 (1943); see *Austin's Estate*, 315 Pa. 449, 173 A. 278 (1934).

Decree vacated and remanded for proceedings consistent with this opinion. Each party pay own costs.

LARSEN, J., concurs in the result.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice, dissenting.

The record in this case discloses that William A. Applegate, the testator, both at the time he executed his will and at the time of his death, was a domiciliary of the United States Virgin Islands. The will was probated and the estate proceedings were conducted in the District Court of the Virgin Islands, Division of St. Thomas and St. John, where the final account of the executor was filed, reviewed and confirmed. This very real connection of the decedent with a jurisdiction other than Pennsylvania is not adverted to by the Court; it does, however, point up problems which prompt this separate opinion.

Following devises of certain real property located in Sharon, Pennsylvania, the testator in Item THIRD of his will directed that "all the remainder of my property, be the same real, personal or mixed of whatsoever nature and wheresoever situate" be placed in trust for the purposes noted in the Court's opinion. The record does not disclose the assets comprising the residuary estate, and so does not indicate whether or not it includes realty as well as personalty. To the extent that there is real property located outside Pennsylvania, however, it is doubtful that the court below had jurisdiction over the subject matter of this suit. *See* Restatement (Second) of Conflict of Laws § 276, and comments thereto (1971). As to personal property comprising the trust, see *id.* § 267.

In addition, it appears that, to the extent that the trust res consists of personal property, the court below may have erred in determining the questions presented here under Pennsylvania law. As noted in Section 268 of the Restatement (Second) of Conflict of Laws:

"Construction of Trust Instrument

"(1) A will or other instrument creating a trust of interests in movables is construed in accordance with the rules of construction of the state designated for this purpose in the instrument.

"(2) In the absence of such a designation, the instrument is construed

"(a) as to matters pertaining to administration, in accordance with the rules of construction of the state whose local law governs the administration of the trust, and

"(b) as to matters not pertaining to administration, in accordance with the rules of construction of the state which the testator or settlor would probably have desired to be applicable."

Comment f to this section similarly observes:

"f. *Matters not of administration, testamentary trusts.* As to the rules of construction which relate to the disposition of the trust property rather than to the administration of the trust, the will is ordinarily construed in the case of movables in accordance with the rules of construction of the state of the testator's domicil, even though the trust is to be administered in some other state.

"Although ordinarily the courts will apply the rule of construction of the testator's domicil at death, it will not do so if the testator is found to have intended that the rule of construction of some other state should be applicable. Although when a trust is created by will, the will is ordinarily construed in accordance with the rules of the state of the testator's domicil at death, the fact that he executed the will when domiciled in another state is usually sufficient to show that he presumably intended that the will should be construed in accordance with the rules of that state. So also, the fact that he executed the will in a state other than that of his domicil at the time when he executed it and at the time of his death may show an intention that the will should be construed in accordance with the rules of that state."

See also *Rice Estate*, 8 Pa.D. & C.2d 379, 401–10 (O.C. Montgomery Co. 1956) (alternative holding) (applying similar provisions of Restatement of Conflict of Laws (1934)).*

Because the question of subject matter jurisdiction is not free from doubt, and because choice of law questions should

* As to real property included in the trust res, see Restatement (Second) of Conflict of Laws 277, and comment c (1971).

be resolved before this case can be properly decided, I would vacate the decree and remand the case for further proceedings consistent with this opinion. I therefore express no view at this time concerning the construction of this trust, the proper answers to which are far from clear. *Cf.* Restatement of Property §§ 294, 295 & comment k (1940). *See generally,* Casner, Class Gifts to Others than to "Heirs" or "Next of Kin": Increase in the Class Membership, 51 Harv. L.Rev. 254 (1937).