421 A.2d 166

ESTATE of Charlotte H. S. HOUSTON, Deceased.

**Appeal of Charles Wardell BROWN, Jr. and Wayne W. Brown.**

**Appeal of W. West FRAZIER, IV, Bettina Frazier Wall and Josephine Frazier Hart.**

**Appeal of Sarah L. O. SMITH and Mary Minor C. Smith.**

Supreme Court of Pennsylvania.

Argued April 14, 1980.

Decided Sept. 22, 1980.

Philip A. Bregy, Philadelphia, for appellant in No. 260 and appellee in Nos. 263 and 266.

Norman H. Brown, Philadelphia, for appellant in No. 263 and appellee in Nos. 260 and 266.

William H. Ewing, Philadelphia, for appellant in No. 266 and appellee in Nos. 260 and 263.

Joseph E. Greene, Jr., Philadelphia, for appellee in No. 260.

## OPINION OF THE COURT

ROBERTS, Justice.

In her will, decedent Charlotte H.S. Houston directs that the income from her two residuary trusts be paid to the two

children of her first marriage. She then directs that, after the deaths of these two children and "upon my youngest grandchild reaching the age of twenty–one (21) years . . ., the balance and principal of both said trusts be paid and distributed to such of my grandchildren as may be living at the time of my death. . . ."

Presented in these appeals are two questions: (1) whether testatrix intended grandchildren born after her death to share in the gift of principal; and (2) if not, whether she nonetheless intended to include in the gift those grandchildren of her second marriage born during her lifetime. We share the unanimous conclusion of the orphans' court en banc that the words "such of my grandchildren as may be living at the time of my death" unambiguously exclude afterborn grandchildren. We also conclude, as did three of the six judges below, that the only reasonable interpretation of the language of the will and the surrounding circumstances is that testatrix intended the principal to be paid to only the grandchildren of her first marriage.

Charlotte H.S. Houston died in 1940 at age seventy–two, having executed a will dated February 15, 1934, and a codicil dated October 22, 1934.[1] By her first marriage to Charles W. Brown, testatrix had a son, Charles, and a daughter, Charlotte Brown Frazier. Her son Charles died in 1951, survived by both his sons, Charles, Jr., and Wayne[2] (the Brown grandchildren). Her daughter Charlotte died in 1973, survived by her three children, W.W. Frazier IV, Josephine Frazier Hart, and Bettina Frazier Wall (the Frazier grandchildren).

Testatrix's first husband died in 1898. Thereafter she married Samuel F. Houston, by whom she had one child, Eleanor Houston Smith. On the date testatrix executed her will, Mrs. Smith had a three month old child, Lewis. Mrs.

1. The contents of the codicil are not relevant to these proceedings.

2. Also known as Joseph Williams Brown.

Smith had three more children prior to testatrix's death [3] and two more afterwards (the Smith grandchildren).

Testatrix's second husband was an extremely wealthy man. During the Great Depression, his one–third share of the income of his father's trust amounted to at least $300,-000 annually. At the time of distribution, the estate of Samuel F. Houston's father was estimated to be approximately $145,000,000. It was divided into twelve equal parts, with one part going to Eleanor Houston Smith, who in 1934 was an heir apparent. Testatrix's own estate was valued at approximately $1,100,000 at the time of her death.

In her will, testatrix provided for several specific bequests to relatives and friends, including a life estate in a summer home to Eleanor Houston Smith, the daughter of her second marriage, and remainder in fee to her daughter's son. Testatrix left nothing to her husband, although she did refer to him in the will as "my beloved husband, Samuel Frederick Houston." In Paragraph 26 of her will, she directed that her residuary estate be placed in trust. Trust income was to be paid to the children of her first marriage, Charles Brown and Charlotte B. Frazier, during their lives.[4] In Paragraph

---

3. One of these children was *en ventre sa mere* when testatrix died and is thus considered to have been born prior to her death. *Trattner Estate*, 394 Pa. 133, 145 A.2d 678 (1958); *Barker v. Pierce*, 30 Pa. 173 (1858).

4. "26. All the rest, residue and remainder of my estate, . . . I give . . . to my trustees . . . in trust, . . . to pay over the net income therefrom in manner following:

FIRST: I direct that one half of the net income therefrom shall be paid and distributed to my daughter Charlotte B. Frazier for and during her natural life; and at and immediately after her decease, . . . the income . . . shall be paid and distributed to and among the children of my said daughter in equal shares, share and share alike until the termination of the trust.

SECOND: I direct that the other half of the net income therefrom shall be paid and distributed as follows:

(a) . . .

(b) I direct that the sum of Five Thousand (5,000) Dollars be paid and distributed to each of my grandchildren, Charles Wardell Brown, Jr. and Joseph Williams Brown, for their maintenance, education and support, during minority, and when they arrive at the age of twenty–one (21) years, then to pay same direct to them until the termination of the trust;

27, testatrix made the following provisions for the termination of the trust and the distribution of the corpus:

"The trusts above created shall continue until the death of my daughter Charlotte B. Frazier and my son Charles Wardell Brown, Sr. and until my youngest grandchild shall have reached the age of twenty—one (21) years. Upon my youngest grandchild reaching the age of twenty—one (21) years (my said daughter and son being deceased), I direct that the balance of principal of both said trusts be paid and distributed to such of my grandchildren as may be living at the time of my death and to the issue then living of such of them as may then be deceased, their heirs and assigns, in equal shares per stripes. Such issue then living taking among them the share only which would be vested in their deceased parent if then living."

The death of Charlotte B. Frazier on October 3, 1973, triggered the provisions for distribution of the trust principal. The trustees filed an accounting in the Philadelphia Court of Common Pleas, Orphans' Court Division, before Pawelec, J. After a hearing, the auditing judge ruled that testatrix intended to include the four Smith grandchildren living at her death in the class gift of principal but that the two afterborn grandchildren, Sarah L.O. Smith and Mary M.C. Smith, were specifically excluded from the gift.

The Browns and Fraziers filed exceptions to the adjudication, challenging the inclusion of any of the Smith grandchildren. The afterborn Smith grandchildren also filed exceptions to the court's ruling which excluded them from participation in the gift. The orphans' court en banc unanimously

(c) I direct that the balance of said income shall be paid and distributed to my son Charles Wardell Brown, Sr. for life, provided that when his share of annual income shall reach Twelve Thousand (12,000) Dollars, I direct that any surplus income over and above Twelve Thousand (12,000) Dollars per annum shall be paid unto him and his two sons, Charles Wardell Brown, Jr. and Joseph Williams Brown, in equal shares, until the termination of the trust; ... upon the death of said son Charles Wardell Brown, Sr...., I direct that the entire income of this trust shall be paid and distributed to his sons Charles Wardell Brown, Jr. and Joseph Williams Brown, in equal shares, until the termination of the trust."

agreed that the afterborn grandchildren were not included in the gift of principal. However, the court en banc divided equally as to whether the other grandchildren of testatrix's second marriage should be included in the gift. Cross appeals were filed in this Court.

The afterborn Smith grandchildren, appellants at No. 266 January Term, 1978, argue that the auditing judge and the court en banc improperly excluded them from the class of grandchildren. They claim that testatrix's use of the phrase "grandchildren ... living at the time of my death" was intended to exclude only grandchildren who predeceased her. The Brown and Frazier grandchildren, appellants at Nos. 260 and 263 January Term, 1978, contend that both the language of the paragraphs relating to the residuary estate and the circumstances surrounding the execution of the will compel the conclusion that testatrix intended only the grandchildren of her first marriage to be beneficiaries of the trust principal.

■ "It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator." *Sykes Estate*, 477 Pa. 254, 257, 383 A.2d 920, 921 (1978), quoting *Hamilton Estate*, 454 Pa. 495, 498, 312 A.2d 373, 374 (1973); accord, e. g., *Blough Estate*, 474 Pa. 177, 378 A.2d 276 (1977). "To ascertain this intent, a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding the execution of the will and other facts bearing on the question." *Sykes Estate*, supra, 477 Pa. at 257, 383 A.2d at 921; accord, *Hamilton Estate*, supra; *Chambers Estate*, 438 Pa. 22, 263 A.2d 746 (1970). Only if the intent does not appear with reasonable certainty will a court resort to canons of construction. *McDowell National Bank v. Applegate*, 479 Pa. 300, 388 A.2d 666 (1978); *Sykes Estate*, supra; *Hamilton Estate*, supra.

We turn first to the question of whether testatrix intended to include the Smith grandchildren born after her death in the distribution of principal, for its resolution will cast considerable light on the more difficult question of whether testatrix intended *any* of the Smith grandchildren to take.

The plain meaning of the language of the will provides the answer to the former question. We are convinced, as were all of the judges below, that the language directing distribution "to such of my children as may be living at the time of my death and to the issue then living of such of them as may then be deceased" unequivocally excludes the afterborn Smith grandchildren. There is simply no justification in logic or law for concluding otherwise. Indeed, "[e]very word and every clause in a will must, if reasonably possible, be given effect; we cannot ignore or delete or render nugatory testatrix's language except in the unusual case where the language of her entire will demonstrates that the language in question was inadvertently used and did not express testatrix's true intent." *Collins Estate*, 393 Pa. 519, 522, 143 A.2d 45, 47 (1958); accord, *McDowell National Bank v. Applegate*, supra.

The afterborn Smiths urge us to ignore the clear meaning of the language and to regard testatrix as having intended all of her grandchildren to take. The above phrase, they claim, was used purely to avoid the effects of double taxation on gifts passing through two estates. That such a use is consistent with an intent to benefit only some or even none of the Smith grandchildren is obvious. Moreover, the Smiths have presented no convincing evidence that testatrix's use of the phrase was inadvertent; rather, as will appear, there is every reason to believe that testatrix meant exactly what she said. Thus, we must conclude that testatrix did not intend to include afterborn grandchildren in the gift of principal.

We now turn to whether testatrix intended the Smith grandchildren born *before* her death to share in the trust principal. Here, testatrix's intent cannot be determined with reasonable certainty from the language of the will alone. On the one hand, as the Browns and Fraziers contend, Paragraph 27 could be read in conjunction with the preceding paragraph, in which testatrix vests the entire income interest in the trust in the Brown and Frazier families and nowhere mentions her daughter by her second marriage. From such a reading it might be concluded that

when testatrix used the words "my youngest grandchild" and "such of my grandchildren" in Paragraph 27, she had in mind only the grandchildren of whom she had previously been speaking. The Smith grandchildren, on the other hand, argue with equal force that the contrast between the specificity of Paragraph 26 and the generality of Paragraph 27 demonstrates that in the latter paragraph testatrix was no longer thinking of only the grandchildren of her first marriage but of all of her grandchildren by both marriages.[5]

An examination of testatrix's scheme of distribution also fails to resolve the apparent ambiguities of the instrument. To prove, as the Smiths have, that testatrix wished to distribute her estate widely among persons close to her and that she did not intend to exclude the Smith grandchildren entirely from her bounty is not to prove that she did intend to include them in the gift of the trust principal. Nor is the exclusion of Eleanor Houston Smith and her children from any share of the trust income proof without more that testatrix intended to exclude the Smith grandchildren from the gift of principal.[6]

Thus, we must look to the circumstances surrounding the execution of the will to determine whether it is possible to

**5.** Both sides have adduced numerous cases in which this Court has construed the language of disputed class gifts to be restrictive [e. g., *Sowers Estate*, 383 Pa. 566, 119 A.2d 60 (1956); *Britt Estate*, 369 Pa. 450, 87 A.2d 243 (1952)] or inclusive [e. g., *Earle Estate*, 369 Pa. 52, 85 A.2d 90 (1951); *Witman v. Webner*, 351 Pa. 503, 41 A.2d 686 (1945)]. All these cases are merely·authority for the rule that a will must be interpreted in accordance with the testator's intent, if that intent can be determined with reasonable certainty. " 'No will has a brother,' declared Sir William Jones . . . Each will is its own best interpreter, and a construction of one is no certain guide to the meaning of another [citations omitted]." *Williamson's Estate*, 302 Pa. 462, 466, 153 A. 756, 766 (1931); accord, *Benson Estate*, 447 Pa. 62, 285 A.2d 101 (1971).

**6.** The Browns claim that the orphans' court erred in ruling inadmissible a memorandum written by Samuel Houston which explains the reasons for his belief that his wife intended only the Brown and Frazier grandchildren to receive the trust principal. Because we are able to determine testatrix's intent with sufficient certainty from the language of the will and the surrounding circumstances, there is no need to address this contention.

"give reasonable effect to every word and every clause" of Paragraph 27 in a manner consistent with testatrix's intent. *Collins Estate*, supra.

The remarkable size of the Houston family fortune has already been noted. Whether or not testatrix was aware of the full extent of her husband Samuel Houston's wealth, she was clearly aware that it was very substantial, that it greatly exceeded her own, and that her younger daughter, Eleanor Houston Smith, would be very well provided for. Also, ten months after she executed her will, testatrix and her husband created a life insurance trust in favor of only the Brown and Frazier grandchildren. Both her indisputable awareness of the Houston fortune and her creation of the insurance trust support the conclusion that testatrix felt a greater financial concern for the grandchildren of her first marriage than for the grandchildren of her marriage to Samuel F. Houston and thus intended to include only the Browns and Fraziers among the distributees of her residuary trust principal.

What compels the conclusion that testatrix did intend to include only the grandchildren of her first marriage is, as will appear, her view that grandchildren would possibly be born after her death to Eleanor Houston Smith but not to Charlotte Brown Frazier or Charles W. Brown. At the time she executed her will, testatrix was sixty–six years old. Her daughter Eleanor Houston Smith was twenty–four years old and had had her first child only three months earlier. On the other hand, testatrix's elder daughter Charlotte was then thirty–eight years old. Her youngest child was nearly six, and her two older children were twelve and ten. Testatrix's son Charles was forty–one years old, and his sons were eight and six. From the language of the will it is clear that testatrix contemplated future grandchildren in the Houston–Smith line. In Paragraph 12 she directs her daughter Charlotte to try to find some piece of jewelry for "each girl among my and my husband's granddaughters, more especial-

ly my namesakes." Because testatrix had at the time only one such namesake, Charlotte Josephine Frazier, she must have believed that Eleanor Houston Smith would bear additional children.

This circumstance gives reasonable meaning to testatrix's direction that the trust principal be distributed "to such of my grandchildren as may be living at the time of my death and to the issue then living of such of them as may then be deceased." As we have stated, this direction cannot be interpreted to include afterborn grandchildren. Yet all parties agree that the *deliberate* exclusion by testatrix of grandchildren born after her death into any line would be strikingly contrary to her manifest generosity. If testatrix foresaw the possibility of any of her children having children after her death, the clear meaning of the above direction requires the inference that she intended to exclude the afterborns in that line. Such an inference is inescapable in the case of Eleanor Houston Smith and her infant son, for testatrix could not have reasonably discounted the possibility that her twenty–four year old daughter might continue to bear children for many years. On the other hand, testatrix could well have reasonably believed that her thirty–eight year old daughter and the wife of her forty–one year old son were past their childbearing years. Intending to benefit only their lines, testatrix would then have had no occasion to consider the exclusion of afterborn grandchildren. Her only concern would have been to provide for distribution in the event of a *decrease* in the number of Brown and Frazier grandchildren before her death, a possibility to which the above direction is directly addressed.

In light of testatrix's view of the differing financial expectations of the grandchildren of her two marriages, her exclusion of all of the Smith grandchildren from the gift of principal is also entirely consistent with her generosity. As Judge Shoyer observed in his opinion in support of reversal of the decree nisi, "[i]t is clear to us that testatrix realized

that by including the Smith grandchildren, she would be creating *in*equality, for the Houston inheritance would advance the fortunes of the Smith line far beyond her '[power] to add or detract.' "

The Smiths argue that testatrix may well have expected her daughter Charlotte to bear more children. They note that in both the will and the insurance trust testatrix refers to the two sons of Charles Brown by name, whereas she refers to the three children of Charlotte Frazier as children. Thus, they contend, testatrix must have believed that the class of Frazier grandchildren might increase. This argument, however, depends upon the assumption that testatrix did not expect further grandchildren in the Brown line, yet the Smiths concede that it was *"theoretically"* possible for the Browns to have more children.[7] When one recalls that Charles Brown, Sr., was forty–one years old and his sons eight and six when the will was executed (the record does not disclose the age of Mrs. Brown), the "theory" becomes no less likely than the theory that testatrix expected Charlotte Frazier to continue to bear children. It is more reasonable to assume that, in light of their ages, testatrix expected neither Charles nor Charlotte to produce children after her death (an expectation which proved to be correct) and that she referred to the Fraziers as "children" rather than by name because of their greater number and difference in sexes.[8]

Our view that testatrix intended to benefit only the Browns and Fraziers also clarifies what would otherwise be her ambiguous direction that the principal be distributed "upon my youngest grandchild reaching the age of twenty–

7.  Smiths' brief at 17; italics in original.

8.  We also note that in Paragraph 26 testatrix made specific provision for the education and support of Charles, Jr., and Joseph Williams Brown from the income portion of her residuary trust; she made no such specific provision for the Frazier children, preferring to bequeath or devise property to each of them elsewhere in the will. Thus, she may have felt less need to refer to the Frazier children by name in that paragraph.

one." Because the words directing distribution to grandchildren "living at the time of my death" occur after the above phrase, we would have to distort the syntax of testatrix's language in order to read "youngest grandchild" to mean "youngest grandchild born before my death." This we cannot do. See, e. g., *Kelsey Estate*, 393 Pa. 513, 143 A.2d 42 (1958). The only grammatically and logically reasonable interpretations of this ambiguity are that testatrix meant either the youngest of *all* of her grandchildren or the youngest of the Brown and Frazier grandchildren. She could not have meant the former, however, for then the satisfaction of the condition by an afterborn grandchild–who could not take–might well have triggered the distribution. On the other hand, if, as we have seen, testatrix meant to benefit only the Browns and Fraziers, she would logically make the distribution dependent upon the attainment of age twenty–one by the youngest grandchild who could take.

As this Court observed in *Henderson Estate*, 405 Pa. 451, 456, 176 A.2d 428, 430 (1962), "A court has no right to create equality among grandchildren even if we think that is desirable, unless the testatrix clearly intended to create equality among all her grandchildren, and this she failed to do." We thus conclude that testatrix intended to include only the Brown and Frazier grandchildren in the gift of her residuary trust principal. Such a conclusion–and no other–gives reasonable effect to "every word and every clause" of Paragraph 27 and accords with the circumstances surrounding the execution of the will. *Collins Estate*, supra; accord, *McDowell National Bank v. Applegate*, supra, *Blough Estate*, supra.

The decree at No. 266 is affirmed. The decree at Nos. 260 and 263 is reversed, and the case is remanded for the entry of an appropriate decree consistent with this opinion. Each party to pay own costs.

EAGEN, C. J., dissents.